𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SOUTHERN RAILWAY COMPANY V. ABEE'S ADMINISTRATOR.

January 16, 1919.

1. CROSSINGS—*What Constitutes Highway Crossing—Section 1294-d (24), Code of 1904—Warnings.*—An alley which crossed a railroad, though owned by a furniture company, was in constant use by numbers of persons, employees of that company, and others, who crossed the tracks there every day. The engineer and conductor in charge of a shifting engine, which killed plaintiff's intestate at the crossing, knew that the crossing was used every day by large numbers of persons at the very hour when the accident occurred; and there was evidence tending to show that the defendant company had recognized it as a highway crossing by the erection there of a "whistle post."

*Held:* That the crossing was clearly such a crossing as to fall within the letter and spirit of section 1294-d (24) of the Code of 1904, requiring the sounding of the whistle and the ringing of the bell by all locomotive engines as a warning of their approach to highway crossings.

2. CROSSINGS—*Negligence of Railroad—Warnings—Rate of Speed.*—It is negligence to run an engine at a high rate of speed over a highway crossing without lights and without giving timely warning of its approach.

3. CROSSINGS—*Warnings and Lights.*—One who upon approaching a crossing waited until a passenger train had passed, had the right to assume that any engine or train approaching upon a parallel track would carry lights and would give proper signals.

4. CROSSINGS—*Contributory Negligence—Presumption of Exercise of Due Care.*—In the absence of proof to the contrary, one killed at a highway crossing is presumed to have exercised ordinary care.

5. CROSSINGS—*Contributory Negligence—Burden of Proof.*—As a general rule the burden of proof is on the defendant to show contributory negligence on the part of the plaintiff if relied on as a ground of defense unless contributory negligence of the plaintiff is disclosed by his own evidence or may be fairly inferred from all the facts and circumstances of the case. In

the instant case this rule was applied where plaintiff's intestate was killed at a railway crossing.

6. CROSSINGS—*Duty to Maintain Lookout—Instructions.*—It is the duty of a railroad's employees controlling an engine and tender to exercise ordinary care and diligence in keeping a lookout to avoid injury to a person crossing the tracks at a highway crossing and to warn him of approaching ·danger, and an instruction to this effect is not erroneous because during the course of the trial the plaintiff offered proof of an alleged rule of the defendant company requiring the crew in charge to keep a man as a "lookout" on the rear of the tender, this proof having been at first allowed, and afterwards stricken out by the court.

7. INSTRUCTIONS—*Directing Verdict—Partial View of The Evidence.* —An instruction peremptorily directing a verdict for the defendant upon a partial view of the evidence is reversible error.

Error to a judgment of the Circuit Court of Pittsylvanit county, in .an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Withers, Brown & Leigh,* for the plaintiff in error.

*B. H. Custer,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

On the 15th day of January, 1916, Lloyd Abee was killed at a crossing by a shifting engine owned and operated by the Southern Railway Company. His administrator brought this action alleging that his death was due to the negligence of the defendant company. There was a verdict for the plaintiff, and thereupon the trial court rendered the judgment under review.

Stated briefly, and in general terms, the negligence com-

plained of was that the engine approached the crossing at a reckless and dangerous rate of speed, in the dark, without lights, and without sounding the whistle or ringing the bell.

As to the most material facts and circumstances bearing upon these charges of negligence, the evidence is in glaring conflict; but the conflict has been conclusively settled for this court by the verdict of the jury. We must look at the case, so far as the facts are concerned, in the light of such of the evidence as tended materially to support the verdict; and thus portrayed, it is substantially as follows: The plaintiff's decedent, Lloyd Abee, was a young man slightly over twenty years of age, of good habits, strong, active and intelligent. He was physically well-developed, except that his hearing and power of speech were so limited that he could only utter a few familiar words—like digital numbers and family names, and could only hear loud sounds, like a nearby shout, a gunshot, a train bell or whistle. The accident occurred shortly before daylight, just outside the limits of the city of Danville. Abee lived in Danville, and was on his way to the Boatright furniture factory where he was regularly employed. In going there, like many other persons, he approached the railroad crossing through an alley extending from Stokes street to the gate entering the factory premises. Stokes street runs parallel with the railroad, and is about a hundred and sixty feet west of the right of way. The crossing in question is between Stokes street and the factory, and the alley along which Abee was traveling crosses the railroad about at right angles. The railroad, which runs north and south at that point, is double-tracked, and trains pass there at frequent intervals, both day and night. Abee came east on the alley and had reached the crossing just as a southbound passenger train was passing on the track next to him. Shortly after it passed, he crossed the first track,

and had started across the second when he was struck by the tender of a north-bound shifting engine, commonly known as a shifter, which was moving backwards over the crossing. The conflict of evidence already adverted to is particularly marked as to (a) the distance between the rear of the passenger train and the crossing when Abee crossed the south-bound track, (b) the rate of speed at which the shifter was moving, (c) the presence of signal lights thereon, (d) the distance from the crossing at which the shifter could have been seen by a man looking for it at that point, and, (e) the sounding of the bell and whistle. These are vital and controlling facts, and the jury accepted the plaintiff's theory upon evidence which tended to show that when Abee attempted to cross the track the rear of the passenger train was some distance beyond the crossing, that the shifter was running down grade at a speed of perhaps thirty miles or more an hour, without any lights, making very little noise by its movement, sounding no whistle or bell, and that in the darkness then prevailing the shifter itself was not visible until within a few feet of the crossing.

[1. 2.] Taking up the assignments of error in the order of their importance, the first is that the court ought to have granted the defendant's motion for a new trial on the ground that the verdict was contrary to the law and the evidence. We are of opinion that the motion was properly over-ruled. The negligence of the defendant company, viewing the evidence as upon a demurrer thereto, must be conceded. The Boatright alley, though owned by the furniture company, was in constant use by numbers of persons, employees of that company and others, who crossed the tracks there every day. The engineer and conductor in charge of the shifter both knew that the crossing was used every day by large numbers of persons at the very hour when the accident occurred; and there was evidence tending to show that the defendant company had recognized it as a highway cross-

ing by the erection there of a "whistle post." It was clearly
such a crossing as to fall within the letter and spirit of
section 1294-d (24) of the Code, requiring the sounding
of a whistle and the ringing of the bell by all locomotive
engines as a warning of their approach to highway cross-
ings (*N. & W. R. Co.* v. *Bristol,* 116 Va. 955-962, 83 S. E.
421) ; and the case is not at all within the influence of the
decision of this court in *Washington, etc. Co.* v. *Fisher,*
121 Va. 229, 92 S. E. 809, relied upon by counsel for the
defendant company. That it was negligence to run the en-
gine at a high rate of speed over this crossing without
lights and without giving timely warning of its approach,
(all of which the jury may have properly believed was true
from the evidence) is a proposition too plain for argument.

[3-5] Was the plaintiff's decedent guilty of contribu-
tory negligence? This question we think was likewise con-
cluded by the verdict. We are unable to say, as a matter of
law, that he was guilty of any negligence at all. That de-
pends upon the same conflicting evidence which envelops the
question of the defendant's primary negligence. There is
no middle ground in the case. If, as contended by the
railroad company, Abee crossed the south-bound track im-
mediately after the passenger train had passed, and, with-
out looking, stepped directly in front of an engine equipped
with lights, giving the statutory signals, and running at a
cautious rate of speed, then there was no negligence in
the case at all except his own. On the other hand, if, as
the plaintiff claims, the passenger train had passed some dis-
tance beyond the crossing, and if the engine was moving
in the dark, at a dangerous speed, without sounding any
warning, without any lights, then the only negligence which
appears is that of the defendant. Abee had the right to
assume that any engine or train then coming would carry
lights and would give proper signals. If this engine had
done these things, since the track was straight for a long

distance from the crossing, Abee would certainly have discovered its presence if he exercised ordinary care, and this, in the absence of proof to the contrary, he is presumed to have done. The burden of showing his contributory negligence rested upon the defendant company. The court submitted this question to the jury upon an entirely correct instruction (plaintiff's No. 9) as follows: "The court instructs the jury that as a general rule the burden of proof is on the defendant to show contributory negligence on the part of the plaintiff if relied on as a ground of defense unless contributory negligence of the plaintiff is disclosed by his own evidence or may be fairly inferred from all the facts and circumstances of the case." *Southern Ry. Co. v. Bryant's Adm'r,* 95 Va. 212, 220, 28 S. E. 183; *Southern Ry. Co. v. Bruce's Adm'r,* 97 Va. 92 33 S. E. 548; *Core v. Wilhelm, ante,* p. 150, 98 S. E. 27, decided today. The opinion of this court in *So. Ry. Co. v. Mason,* 119 Va. 256, 89 S. E. 225, cited and relied upon by counsel for the defendant company, is not in any way in conflict with the instruction here approved.

Certain witnesses, who are not contradicted by any direct testimony, stated that they could see Abee as he stood at the crossing while they were at some distance from him, and it is earnestly argued that as nobody contradicted these witnesses, it necessarily follows, as a fact established without conflict, that Abee himself could see a like distance from the point at which he stood, and must, therefore, have been able to see the engine before it reached the crossing. There are two sufficient answers to this contention, first, that an electric light which stood near the intersection of Stokes street and Boatright alley, threw a dim light down the alley on the crossing so as to probably make objects there visible without giving light to any appreciable distance on either side of the crossing; and second, there was direct testimony that the engine could not be seen until it

had arrived at the crossing, and that after Abee was struck
and his body had been carried a short distance from the
crossing, the darkness was such as to make it necessary to
strike matches and use lanterns before the persons who
went to him could determine whether he was a white man
or a negro.

[6]   The next error assigned and discussed in the peti-
tion upon which this writ was awarded involves the action
of the court in giving instructions 8 and 9 for the plaintiff.
We have already quoted instruction 9, and cited the authori-
ties which show that it was correct.   Instruction 8 was as
follows: "The court instructs the jury that it was the duty
of the defendant's employees who were controlling the en-
gine and tender on the morning of January 15, 1916, to
have exercised ordinary care and diligence in keeping a look-
out to avoid injury to the plaintiff's intestate and to warn
him of approaching danger." In the light of the facts of
this case as already stated, it is manifest that this instruc-
tion was free from error.   The objection urged to it is that
it tended to mislead the jury because during the course of
the trial the plaintiff offered proof of an alleged rule of the
company requiring the crew in charge to keep a man as a
"lookout" on the rear of the tender, this proof having
been at first allowed, and afterwards stricken out by the
court. The contention here is that because such evidence was
first admitted and afterwards excluded, the giving of the
instruction in question might have led the jury to believe
that it was the duty of the company to have a man riding
on the rear of the tender at the time of the accident. The
court, in directing the jury to disregard the evidence about
the rule, explicitly told them that the rule did not apply to
the case on trial, and we are unable to appreciate the force
cf the objection to the instruction under consideration.
As an independent proposition, it was entirely correct, and
the introduction of the proof in question, in view of the

49

express terms in which it was afterwards stricken out, could not in any reasonable probability have caused the jury to misunderstand the instruction.

The defendant asked the court to give two instructions respectively designated as "B" and "G", which the court gave as requested, except that it added to each the words, "the approach of which could have been seen by him if he had looked in that direction,". appearing in italics in the instructions as here set out.

Instruction B: "The Court instructs the jury that if they believe from the evidence that when Loyd Abee approached the tracks of the Southern Railway Co. at Boatright's crossing that a train on the Danville and Western Railroad Company was passing over said crossing on the south-bound track going south; that said Loyd Abee stopped to allow said train to pass, and immediately after said train had passed, proceeded over said south-bound track in the rear of said train and on to the north-bound track, immediately in front of an engine and tender moving on said north-bound track, *the approach of which could have been seen by him, if he had looked in that direction* and that when he stepped upon said north-bound track he was so near to said engine and tender that it could not, in the exercise of ordinary care, have been stopped in time to have avoided striking him, then they should find for the defendant in this action." (Italics added).

Instruction G: "The court instructs the jury that it is not the duty of the engineer of a railroad engine or train to stop when he sees a person standing near the track in a place of safety. He has the right to assume that the person will not go upon the track in front of a moving engine or train in plain view but will remain in a place of safety, and the duty of the engineer to stop his train or slow down does not arise until the engineer sees that the person is about to go upon the track in front of his engine or train,

and if the jury believe from the evidence that Loyd Abee was standing near the track in a place of safety, and then went upon the track in front of the engine and train of the Southern Railway Company, *the approach of which could have been seen by him if he had looked in that direction,* and so near thereto that it could not be stopped in time to avoid injuring him, then the said Loyd Abee was guilty of such negligence on his part as bars a recovery in this action, and they should find for the defendant in this suit." (Italics added.)

[7.] It is urged that the court erred in adding the italicised words to each of these instructions, but we are of opinion that the addition was entirely proper, and that both would have been misleading and erroneous without such addition. The purpose of both instructions was to present to the jury the defendant's theory that the plaintiff had blindly and negligently walked in front of a moving engine, but they ignored the plaintiff's contention that he could neither see nor hear the engine because of the defendant's own breach of duty. Thus, the instruction "B" as offered told the jury that they must find for the defendant if Loyd Abee stepped on the track in front of the engine after it was too late for the engine to be stopped in time to avoid the accident, (the very thing the plaintiff admits, but charges to the default of defendant) leaving out entirely the plaintiff's theory that Abee could not have seen or heard the engine up to the time when he went on the track. In other words, the instruction peremptorily directed a verdict for the defendant upon a partial view of the evidence, which this court has repeatedly held to be reversible error. *Washington So. Ry. Co.* v. *Grimes' Adm'r,* post, p. 460, 98 S. E. 30, decided today.

Instruction "G", as offered, apparently started out with the assumption that the plaintiff's decedent could see the engine, but when it came to the proposition upon which

it told the jury to find for the defendant, it omitted that assumption, and thus became amendable to the same fault which vitiated instruction B as offered.

We have discussed the only errors assigned in the petition. In the reply brief, the action of the trial court as to some of the other instruction is attacked, and, while this is not a sufficient assignment of error, we have considered all the questions thus made, and are of opinion that the court committed no error in regard to any of them.

The judgment is affirmed.

*Affirmed.*