# Richmond

## THE CHESAPEAKE AND OHIO RAILWAY COMPANY v. GEORGE L. FAISON.

April 25, 1949.

Record No. 3484.

Present, All the Justices.

The opinion states the case.

*Murray, Ford, West & Wilkinson,* for the plaintiff in error.

*Ashton Dovell* and *B. D. Peachy,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

George L. Faison, sometimes hereinafter referred to as the plaintiff, recovered a verdict and judgment in the court below against the Chesapeake and Ohio Railway Company for damages for the loss of his automobile which was struck and demolished by one of its trains at a grade crossing in York county.

At the time of the accident the plaintiff was the owner and operator of a taxicab in Williamsburg. On January 29, 1943, about 9 p. m., he left Williamsburg for the purpose of going to the Navy Mine Depot near Yorktown. It was snowing and the visibility was poor. He proceeded southeastwardly along Highway No. 60, which runs along the southern or western side of the railroad tracks. Since his point of destination was to the north or east of the railroad, it was necessary that he cross ·the tracks. He passed Bell's crossing, which was the first crossing just east of Williamsburg, and turned left at Levinson's crossing, which he thought was a public crossing and a connecting link between Highway No. 60, on the southern or western side of the railroad, and Highway No. 168 on the northern ·or eastern side of the tracks. After he had crossed the first of the two tracks at this crossing and had reached the second, he observed a gate blocking his passage to Highway

No. 168. Finding the gate locked and there being insufficient space within which to turn around, he attempted to back his car across the crossing to Highway No. 60, whence he had come. In doing so one of the wheels of the car ran off the edge of the paved portion of the crossing, the car became stalled on the eastbound railroad track, and was struck by a train before it could be removed.

There was no charge of negligence in the operation of the train. The gravamen of the action was that the crossing was constructed by the Railway Company "for the use of the public;" that at the company's "invitation" and with its "knowledge and consent" it had been "extensively used by the public;" that the company negligently "caused a gate to be erected across this crossing," and to be locked during the nighttime; that the plaintiff, "having mistaken it for a different crossing, and not knowing of the gate," drove his car thereon during the nighttime and was "trapped" by the gate; that by reason of the "roughness and narrowness of the crossing," which the Railway Company "negligently permitted to exist," he was unable to turn around on the crossing; and that in attempting to back his car from the crossing it "became wedged between the rails" and was struck by the passing train.

The main defense of the Railway Company was that this was a private or farm crossing, constructed for the exclusive use of an adjacent property owner, G. B. Levinson, his servants and employees; that it had required Levinson to erect the gate across the crossing in order to prevent public use of it; that the plaintiff was a trespasser or bare licensee, using the crossing at his own risk; and that as to him the Railway Company was guilty of no breach of duty or negligence in permitting the erection of the gate and the obstruction of the crossing.

Over the objection of counsel for the Railway Company the lower court submitted to the jury for their determination whether, under the evidence, there was such public use of the crossing as to constitute it a public crossing, and if so, whether the Railway Company, in permitting the gate

to be erected and locked, was guilty of negligence which was the proximate cause of the collision.

The position of the Railway Company in the court below was, and before us is, that the evidence is insufficient to support this instruction and to sustain a verdict predicated upon a finding that this was a public crossing, or that it was used by the public as such, and that the Railway Company knew or should have known of it.

The crossing passes over the main line of the Railway Company, about five miles east of Williamsburg. At this point two railroad tracks, running approximately northwestwardly or southeastwardly, are bordered respectively on the south or west by Highway No. 60, and on the north or east by Highway No. 168.

The evidence is undisputed that the crossing was originally constructed as a farm crossing and led from Levinson's farmhouse, on the north or east side of the Railway Company's right of way, southerly across its tracks to Highway No. 60, which was formerly a county road. The crossing gave Levinson access to his farm lands on the south or western side of the railroad and Highway No. 60.

About 1937, Highway No. 168 was constructed along the northern or eastern side of the railroad. It ran through the Levinson farm and intersected the farm crossing. Thus the crossing became, physically speaking, a connecting link between the two highways. But it is agreed that at that time it was not converted into or used as a public crossing. On the contrary, about two years prior to this accident, the Railway Company barricaded the crossing and it remained closed for an undisclosed period. Then, upon the insistence of Levinson, and in order to give him and his employees a convenient passageway between the farmhouse and his lands to the south or west of the railroad, the crossing was reopened by the Railway Company upon the agreement by Levinson that he would erect a gate across the crossing at the northern or eastern edge of the Railway Company's right of way, and keep it locked during the nighttime. When so installed and closed the gate obstructed

passage over the crossing as a connecting link between the two highways.

At the time of the accident the surface of the crossing was paved with asphalt to a width of twelve feet, and was in good condition.

That the crossing, upon being roepened at Levinson's request, was a private and not a public crossing is clearly shown in the evidence and is conceded by the plaintiff.

It was not a street or road dedicted to public use, nor did the Railway Company regard it as a public crossing. It did not erect near by the usual whistle posts or cross-arm signal indicative of a public crossing, nor did it invite the public to use it as such. On the contrary, as has been said, it required Levinson to bar the crossing with a gate which was open during the daytime for his convenience and closed and locked by him at night.

The plaintiff argues that there was sufficient evidence to warrant the finding that after the crossing was reopened the public made such general use of it as to put the Railway Company on notice that it was no longer a private crossing but had become a public crossing. Hence, he says, such users became invitees on the company's right of way and were entitled to be treated by it as such.

It seems to be settled in this jurisdiction that constant or frequent use by the public of a private crossing, with the knowledge and acquiescence of the railway company, may give to such a passageway the attributes of a public crossing and cast upon the railway company the duty of exercising ordinary care for the safety of such users. See *Southern R. Co.* v. *Abee*, 124 Va. 379, 382, 383, 98 S. E. 31, 32; *Chesapeake, etc., R. Co.* v. *Bullington*, 135 Va. 307, 312, 116 S. E. 237; *Chesapeake, etc., Ry. Co.* v. *Pulliam*, 185 Va. 908, 913, 41 S. E. (2d) 54, 56.

In each of these cases the use of the crossing by the public was habitual, general and of long standing, and was known to the employees of the railway company.

The case before us is lacking in these essential characteristics.

The plaintiff sought to prove general and public use of the crossing by four witnesses, but an analysis of their testimony will show that it falls far short of the desired object.

Faison, the plaintiff, testified that he had not used the crossing before. Indeed, he alleged in his notice of motion that he drove upon it "having mistaken it for a different crossing," and such is the purport of his testimony.

B. C. Bunn, an employee of the Texas Company at Newport News, testified that he had driven by the crossing several times a day during the last several years. He said that he had used the crossing once during the daytime, but had not seen others using it.

R. W. Mahone, who is engaged in the mercantile business in Williamsburg and lives on Route 168, about five miles from the crossing, stated that he "considered" it a public crossing, because it was in "good condition" and he had seen no "signs to the contrary." He said that he had used the crossing but "not so often." While he further said that he had "seen others use it," when pressed on direct examination for specific incidents he recalled having seen a funeral procession cross the tracks there on one occasion. He had "never noticed" or observed the presence of the gate.

Y. C. Skillman, who lives on Route 168, adjoining the Levinson property, when asked the direct question "Is this crossing used by the public?" replied: "If you want to. It's open; very good crossing. You can drive across it. I used it when I wanted to visit the Eppersons or my brother." He further testified that at times he had assisted Rushin, the manager of the Levinson farm, in harvesting the latter's crops on the lands on the south or western side of the railroad tracks, and in so doing had used the crossing. This latter use was, of course, one for which the crossing was constructed.

As opposed to this vague evidence of infrequent public use we have the clear and positive testimony of Rushin, the manager of the Levinson farm, that the crossing was

reopened at Levinson's request for the use of the latter's tenants and employees, and that pursuant to the agreement with the Railway Company the gate was installed to prevent the public use of the crossing.

C. K. Butler, the section foreman of the Railway Company in this area for more than ten years, testified that it was a private crossing installed for the benefit of and used by Levinson's tenants and employees.

J. H. Poindexter, track supervisor of the section, testified to the same effect.

This is a resumé of the entire evidence on the subject of the use of the crossing. It does not, in our opinion, support a finding of such general use by the public as to charge the Railway Company with notice that the passageway had been converted by usage from a private to a public crossing.

Since the plaintiff was not within the category of those persons for whose use the crossing was installed, he was at best a bare licensee on the property of the Railway Company and took the crossing as he found it. The Railway Company owed him no duty to keep the crossing in a reasonably safe condition, free of obstruction, or to give him warning of the presence of the gate. See *Ingle* v. *Clinchfield R. Co.*, 169 Va. 131, 137, 192 S. E. 782, 784, and cases there cited. As to him it was not guilty of any breach of duty or negligence which was the proximate cause of the accident.

We reverse the judgment of the lower court and enter a final judgment in favor of the Railway Company.

*Reversed and final judgment.*