# Richmond

## NORFOLK & WESTERN RAILWAY CO. V. CHARLES P. EPLING, ADM'R, ETC.

June 20, 1949.

Record No. 3465.

Present, All the Justices.

The opinion states the case.

*Woods, Rogers, Muse & Walker, Andrew S. Coxe* and *A. L. Farrier,* for the plaintiff in error.

*J. L. Dillow* and *W. B. Snidow,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Millard M. Epling, a young man twenty-three years of age, was killed on a grade crossing approximately one-half

mile west of the corporate limits of the Town of Narrows, in Giles county, Virginia, when a truck driven by him was struck by a passenger train known as the "Powhatan Arrow," owned and operated by the Norfolk & Western Railway Company. The administrator brought this action for the wrongful death of decedent and recovered a verdict for $8,500. Judgment was entered on the verdict, which is now before us for review.

The controlling question presented is whether the evidence is sufficient to sustain the verdict of the jury.

The double tracks on the right of way of the defendant company west of Narrows extend approximately east and west. The public highway extends approximately north and south and crosses the railroad company's right of way at grade, approximately one-half mile west of the corporate limits of Narrows. There is a woven wire fence four feet high on the southern boundary of the right of way which extends more than 500 feet east from the grade crossing to the stock pens. A gravel pit is located a few hundred feet south of the stock pens, the main outlet from which is a private road extending north nearly to the fence, thence left, close to and parallel with the fence five hundred feet to the public highway which crosses defendant's right of way.

Epling was employed by Hopkins & Walker, contractors, to haul gravel from the pit. In so doing it was necessary for him to use the grade crossing twice on each trip. Prior to the day of the accident he had passed over it three or four hundred times, and on the day of the accident had used it sixteen to twenty times.

At 2:23 p. m. on September 23, 1947, with his 1½-ton Dodge truck loaded with four tons of gravel, he left the pit and drove westwardly on the private way, parallel with the right of way, for a distance of five hundred feet to the public highway, made a right turn and attempted to cross defendant's right of way when he was struck and killed by a west-bound passenger train.

Plaintiff, in his declaration, charged the defendant with

three acts of negligence: (1) failure to give the statutory signals for the public crossing, as required by Code, section 3958; (2) failure to keep its right of way clear of trees and brush for 100 feet on each side of the crossing, as required by Code, section 3986a; and (3) failure to maintain the bed of the crossing in the condition required by Code, section 3973.

J. E. Kelly, who lived 200 yards from the crossing, was the only witness called by plaintiff to prove that defendant did not sound the crossing signals required by statute. The substance of his testimony is that at the time of the accident he was sitting in his kitchen drinking a cup of coffee. He was not paying any attention to the passing train and heard no signals except "two little quick blasts" followed by the noise caused by the impact of the engine and the truck. For nine years he had been living near the crossing and he was so accustomed to hearing train whistles, bells, and the noise of passing trains that he paid no attention to them and he would not have paid any attention to this passing train had it not been for the fact that he recognized the two sharp blasts of the whistle as danger signals and expected an accident to follow.

This testimony does not make out a *prima facie* case and was insufficient to take to the jury the issue of whether the defendant gave the statutory signals for the crossing.

However, when defendant's motion to strike was over-ruled, it called five witnesses, two of whom were members of the train crew. The other three were not employees of defendant. All five stated positively that the statutory signals were given. The three disinterested witnesses were in or on the Seldromridge house which is approximately 825 feet east of the crossing and approximately 500 feet west of the whistle post. Two witnesses not only saw the train but heard the whistle blowing before it reached the house and after it passed going toward the crossing.

The testimony of these witnesses proves conclusively that the statutory signals were given. This evidence eliminates

from the case the doctrine of comparative negligence as defined in Code, section 3959.

If it be conceded that other evidence for plaintiff was sufficient to take to the jury the question of defendant's negligence as to its failure to keep its right of way reasonably clear of weeds, trees and brush for 100 feet on each side of the public crossing at grade, and failure to maintain the crossing in a smooth, level condition for the full width of the road, such negligence was not the sole proximate cause of the accident.

While the testimony for the plaintiff indicates that weeds and bushes in places were as high as 6 to 8 feet above the level of the ground, the testimony for defendant shows that the eyes of a man riding in the cab of a truck are from 5 to 6½ feet above the level of the road, and that the railroad engine involved was at least twelve feet high. Such being the physical facts, the weeds and bushes along the fence did not materially obstruct the vision of the driver of a truck going west on the private road.

There is a curve to the south in the railroad tracks beginning at or near the whistle post (which is 1320 feet east of the crossing) and ending some 15 or 20 feet east of the crossing. If a straight line be drawn from the end of the wire fence on the highway at a point 11 feet south of the extreme southern rail extending east to approximately the beginning of the curve, it would cross both the east and west-bound tracks 15 to 20 feet east of the crossing, and at approximately 500 feet further to the east the line would be approximately 30 feet north of the northern rail of the west-bound track, and at 900 feet the line would again re-cross the rails and end about the center of the east-bound track. There is included in this line of vision the entire right of way which seems to be level. There were no weeds, bushes or trees to obstruct the view. Indeed, the rails themselves were clearly visible for the whole 900 feet.

When Epling made his right turn from the private road into the public highway he was then 11 feet from the nearest east-bound rail, from which position he had a clear,

unobstructed view across the curve for a distance of more than 900 feet. He was driving at approximately 4½ miles an hour and had to travel 28.1 feet before he reached the southern rail of the west-bound track. The front of his truck, including the cab, had passed over both of these rails when it was struck "about 2 ft. back of the cab" by the front of the engine. Epling did not decrease or increase his speed—that is, while traversing the 28.1 feet he was traveling approximately 7 feet a second. The train was approaching at 48 miles an hour—that is, it was traveling approximately 70 feet a second.

The inevitable conclusion is that when Epling made the right turn from the private road into the public road the train was within 900 feet of the crossing and in plain view. Epling could have stopped his truck almost instantly, certainly within a few feet. His failure to see the approaching train and to take reasonable precaution for his own safety, convicts him of contributory negligence which was the contributing, if not the sole, proximate cause of his death.

Plaintiff also contends that if Epling could have seen the approaching train the engineer of the train could have seen Epling and that the train should have been stopped in time to avoid the collision.

The doctrine of last clear chance is not applicable to the facts in this case. R. A. Mays, engineer, testified that his engine was running between 48 and 50 miles an hour; that when he first noticed the truck it was moving slowly (between 4 and 5 miles an hour) and crossing the south rail of the east-bound track, and at that moment the engine was approximately 250 feet east of the crossing. He realized that the truck was not going to stop, applied his emergency brake, and sounded the distress signals. The front of the truck and cab had passed over the northern rail of the west-bound track when the engine struck it. After the impact the train traveled 1150 feet before it stopped. It appears from the evidence that this is the shortest distance in which this train traveling 48 miles an hour could be stopped with safety.

A railroad track is a proclamation of danger and a traveler on a highway approaching a grade crossing is required to look and listen at a time and place when both looking and listening will be effective. He, for his own protection, must intelligently use both eyes and ears. He must remember that trains run upon fixed tracks and that their course cannot be deviated either to the right or to the left, while no such steel-bound limitation controls the movement of motor vehicles. If a traveler on a highway drives blindly upon a grade crossing, whether his view is obstructed or unobstructed, and takes no precaution for his own safety and is injured, his negligence precludes recovery, if, as in this case, the doctrine of comparative negligence, as defined by statute (3959) is not applicable. *Norfolk, etc., R. Co. v. Eley*, 157 Va. 568, 162 S. E. 3; *Southern R. Co. v. Campbell*, 172 Va. 311, 1 S. E. (2d) 255.

Proof that the statutory signals were given for the public crossing in this case makes applicable the principles stated in the cases of *Virginian R. Co. v. Rodgers*, 170 Va. 581, 197 S. E. 476, and *Nichols v. Southern R. Co.*, 187 Va. 89, 45 S. E. (2d) 913, wherein private grade crossings were involved.

Since there is no evidence to support the verdict of the jury it becomes our duty to reverse the judgment of the trial court entered thereon and enter final judgment for defendant.

*Reversed and final judgment.*