## Staunton

### Norfolk & Western Railway Company, A Corporation v. Otto Fletcher.

September 4, 1956.

Record No. 4551.

Present, All the Justices.

The opinion states the case.

*C. H. Combs* (*F. H. Combs, Combs, Combs & Street*, on brief), for the plaintiff in error.

*W. Clyde Dennis*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Otto Fletcher, hereinafter referred to as the plaintiff, has recovered a verdict and judgment of $5,000 against the Norfolk & Western Railway Company for personal injury and property damages sustained when a car which he was driving was struck by an engine operated by the Railway Company at a private crossing in the Town of Grundy in Buchanan county. The allegation of negligence was that the employees of the Railway Company failed to give a proper and timely warning of the approach of the train. On appeal the Railway Company challenges the sufficiency of the evidence to sustain the verdict, claiming specifically that there is no showing that its employees were guilty of any negligence which proximately caused the collision, and that even if they were, the evidence shows that the plaintiff was guilty of contributory negligence as a matter of law which bars his recovery.

While a map made by the office of the chief engineer of the Railway Company shows that the railroad runs approximately north and south at the scene of the accident, it is generally referred to by the witnesses as running east and west and we will so treat it. Going west, as the train was on this occasion, the main-line track approaches the crossing on a sharp curve to the left around a mountain. On the north side of the main line is a sidetrack and beyond this to the north are several industries located on the right of way of the Railway Company and operated by lessees of that company. These industries are reached by a dirt road which runs eastwardly along the south side of the railroad tracks, then turns sharply to the north and crosses the railroad tracks at a right angle. While this dirt road is not a public highway the undisputed evidence shows that it is frequently used by those going to and from the several industries and the Railway Company maintains the crossing for such use. The Railway Company maintains at the crossing no flagman, gates, or warning device to signify the approach of its trains. As the driver

of a car approaches the crossing from the south his view to the right or east, the direction from which the train came, is obscured until he passes beyond the base of the mountain.

On December 23, 1953, about 5:00 p. m., the plaintiff, Fletcher, accompanied by his wife, drove along the dirt road toward the crossing. It was his purpose to cross the tracks at the crossing to transact business at one of the industrial plants. About 125 to 150 feet west of the crossing Fletcher stopped and talked to H. C. McElroy, the manager of the plant which he (Fletcher) intended to visit. After this conversation Fletcher continued along the road, he said, at a speed of about five miles per hour toward the crossing. According to his testimony, when he was "about 20 feet" from the track he looked "both ways" but saw no train. He slowed down because, he said, his car "was real low and I was afraid it would hang up" on the crossing.

Fletcher further testified on direct examination that "about the time I got upon the track my wife saw it (the train) and hollered at me." When asked by his counsel, "When was the first you heard that train was coming?" his reply was, "When my wife told me there was one coming." Prior to this, he said, he had not "heard" any whistle or bell, although he did not "mean to say" that such signals were not given.

Immediately upon hearing the warning of his wife, Fletcher put the car in reverse and attempted to "back off" the track but was unable to do so before the engine struck his car.

The plaintiff's wife testified that the car was on the track when she first saw the train. When asked where the train was, and how far from the car, when she first saw it, her reply was, "I don't know, I just saw it, I don't remember." At any rate, as soon as she saw the train she warned her husband and that was the first he knew of its approach.

At the time of the accident the plaintiff's right leg and ankle were in a cast as the result of a previous injury. While he testified that this did not seriously interfere with his driving the car, it required that he use his left foot to operate the gas accelerator. When it became necessary to put the car in reverse, as he did in his attempt to clear the track on this occasion, he depressed the clutch with the left foot and operated the accelerator with the crippled right foot.

It is undisputed that at the time of the accident the engine was pulling a train of 101 cars loaded with coal along a slight downgrade

at a speed of about 18 miles per hour. The engineer testified that because of the curvature of the track, from his observation post at the right-hand window of the cab he could not see the crossing as the engine neared it. But the fireman who was seated at the window on the left side of the cab, saw the Fletcher car on the track and "hollered" to the engineer who immediately sounded danger signals by several blasts on the whistle and applied the brakes. At the speed at which the train was moving it was impossible to bring it to a stop before the engine had struck the car and passed beyond the crossing.

One of the issues before the jury was whether the whistle was sounded or the bell rung as the train approached the crossing. The plaintiff's wife testified that she was attentive and "listening" as they approached the crossing and that the signals were not given. Other witnesses for the plaintiff testified that they did not hear any such signals although they were in a position to hear them and the conditions were such that they probably would have heard them had they been given. James Chalfa, one of these witnesses, had heard the whistle blown for a crossing about one-fourth of a mile to the east and was attentive to see whether a friend, H. C. McElroy, had safely gotten across ahead of the train at the crossing here involved. He heard no whistle as the train approached this latter crossing.

On the other hand, the engineer and fireman testified that the signals were given as the train approached the crossing and that danger signals of several short blasts were sounded when the plaintiff's car was seen on the track. Other members of the train crew did not recall having heard any signals before the danger blasts were sounded. In this situation, there was sufficient evidence to sustain the finding of the jury that timely signals were not given.

Since this is not a grade crossing of a "public highway"[1] and is not "outside of" an incorporated town, Code, § 56-414, as amended by Acts 1950, ch. 476, p. 944, requiring a crossing signal, is not applicable. But that did not relieve the Railway Company of the common-law duty to give adequate, reasonable and timely warning of the approach of its train at the crossing. *Atlantic Coast Line R. Co.* v. *Clements*, 184 Va. 656, 665, 36 S. E. 2d 553, 557; *Norfolk & Portsmouth Belt Line R. Co.* v. *Freeman*, 192 Va. 400, 407, 408, 64

---

[1] *Norfolk & Western Ry. Co.* v. *White*, 158 Va. 243, 163 S. E. 530, holds that section 56-414 must be read in connection with section 56-416, which is expressly made applicable to "a grade crossing of a public highway." Compare section 56-414 as amended by Acts 1956, ch. 164, p. 167.

S. E. 2d 732, 736. As was pointed out in *Chesapeake & Ohio Ry. Co. v. Faison,* 189 Va. 341, 345, 52 S. E. 2d 865, 867, "constant or frequent use by the public of a private crossing, with the knowledge and acquiescence of the railway company, may give to such a passageway the attributes of a public crossing and cast upon the railway company the duty of exercising ordinary care for the safety of such users."

It was for the jury to say whether because of the nature of this crossing and its constant and frequent use by the public, with the knowledge and acquiescence of the Railway Company, the latter's employees were negligent in not giving adequate and timely warning of the approach of its train.

[■] At the trial counsel for the Railway Company urged that the evidence on behalf of the plaintiff, and particularly his own testimony, viewed in the light of the physical defects, showed that he was guilty of contributory negligence as a matter of law in driving onto the track without exercising ordinary care for his own safety. The trial court expressed serious doubt as to the matter but finally concluded to submit that issue to the jury.

The position of counsel for the Railway Company should have been sustained. Since, as has been said, Code, § 56-414, as amended, requiring a crossing signal, is not applicable, the companion section, 56-416, substituting the doctrine of comparative negligence for that of contributory negligence, is likewise not applicable. Consequently, the contributory negligence of the plaintiff bars his recovery.

The plaintiff testified that he was familiar with the crossing and had been over it many times. The weather was clear and the visibility good. He was fully aware that his view of the track to the right, the direction from which the train came, was obscured until he had passed beyond the mountain. There was no obstruction to his left which impaired his view of the track or required his particular attention in that direction.

While his wife estimated that "from the edge of the road crossing" one could see "about 100 to 125 feet" in the direction from which the train came, the photographs offered in evidence by the plaintiff, as well as those by the defendant, show that this is not correct. The unchallenged testimony of E. E. Wiley, a witness for the Railway Company, supported by photographs and actual measurements, is that a person in a car 60 feet south of the crossing could see 69 feet up the track to the east, the direction from which the train came;

that 30 feet south of the crossing he could see 126 feet to the east; that 15 feet south of the crossing he could see 229 feet, and from the center of the crossing he could see 276 feet to the east. Thus from the edge of the crossing, that is, from the rail first reached by him, the plaintiff must have had an unobstructed view up the track for at least 250 feet.

It is manifest that at the speed the train was moving and that at which the plaintiff's car was moving, the on-coming engine must have been in plain view when the plaintiff drove onto the track. Therefore, his statement that just before going onto the track he looked and no train was in sight cannot be true. Either he did not look immediately before going onto the track or did not look effectively. If he had looked effectively he is bound to have seen the engine which was dangerously near, and yet by his own admission he did not see it until his wife warned him of the danger. It thus plainly appears that the plaintiff did not exercise ordinary care for his own safety before going onto the track.

In *Norfolk & Western Ry. Co.* v. *Epling*, 189 Va. 551, 557, 53 S. E. 2d 817, 820, we said, "If a traveler on a highway drives blindly upon a grade crossing, whether his view is obstructed or unobstructed, and takes no precaution for his own safety and is injured, his negligence precludes recovery, if, as in this case, the doctrine of comparative negligence" is not applicable. Such is the situation in the present case.

The view we have taken of the matter makes it unnecessary to consider whether the plaintiff was negligent in attempting to operate the car in his disabled condition across the track, and if so, whether that was a proximate cause of the collision.

The judgment is reversed, the verdict set aside, and a final judgment will be here entered in favor of the defendant Railway Company.

*Reversed and final judgment.*