**Raymond PARVIN, Plaintiff-Appellant,**

v.

**CLINCHFIELD RAILROAD COMPANY, Defendant-Appellee.**

No. 78–1272.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1980.

Decided June 17, 1980.

J. D. Lee Law Offices, Knoxville, Tenn., for plaintiff-appellant.

J. W. Baker, Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, Tenn., for defendant-appellee.

Before LIVELY, MERRITT and KENNEDY, Circuit Judges.

MERRITT, Circuit Judge.

In this diversity case, plaintiff appeals from a directed verdict entered by the District Court in favor of the defendant, Clinchfield Railroad Company. Plaintiff was injured while driving his automobile across a railroad crossing. The District Court concluded that plaintiff's failure to see the train coming before the collision constituted contributory negligence under Virginia law barring recovery. We reverse and remand for trial.

I.

The plaintiff and his family, who live in Illinois, were visiting the Stewarts at their farmhouse back off the main road in rural Scott County, Virginia. There are two sets of railroad tracks and a so-called "private" or rural railroad crossing in front of the Stewart residence. From the Stewart residence a gravel farm road runs east. Going from the residence the road crosses first a passing track and then the main line track approximately 8 feet beyond the passing track. The Stewarts' house is on a hill immediately west of the tracks.

The gravel road runs down a relatively steep incline from the house to the tracks. It then crosses the tracks and continues sharply downhill for some distance. The sloping road on the other side of the tracks from the Stewart house is not visible to a driver until he is on top of the tracks. At the edge of the road where it crosses the tracks, the bed of the railroad is several inches lower than the gravel road. The gravel road is narrow and rough at the place where it crosses the track. It consists

of a built-up area not much wider than an automobile. A driver crossing the tracks would have to take care in order to see that his car did not slip off the edge of the road and become stuck in between the tracks.

Just before the accident, Stewart was returning a neighbor's car, and plaintiff was following him in order to give him a ride back home. Stewart's automobile was in front of the plaintiff's automobile as they approached the tracks. According to the testimony, plaintiff brought his car to a complete stop before reaching the first, or passing, track. He looked and listened for an approaching train. He did not see or hear anything.

The train was coming from plaintiff's left traveling in a southerly direction. As plaintiff approached the crossing, his view in that direction was obstructed by a high embankment covered with vegetation. The tracks curve back behind the embankment. Plaintiff stopped and looked at the edge of the first track, but the embankment, vegetation and track curvature obstructed plaintiff's view and limited the distance he could see up the track to approximately 450 feet. He proceeded across the tracks. Upon reaching the eastern or main line set of tracks, he was struck by defendant's train and suffered injuries. He never saw the train coming.

An eyewitness and plaintiff's reconstruction expert witness estimated the speed of the train at 60 to 70 miles per hour. The reconstruction expert testified that it would take a train traveling that speed approximately 5 seconds to move 450 feet. The reconstruction expert further testified that even if plaintiff had seen the train after starting across he would not have been able to stop short of the main track, given normal reaction time and the time and distance necessary for the car to be brought to a complete stop. A second reconstruction expert who had visited the scene testified without objection:

> Well, it [the road] has disappeared and does disappear and stays disappeared until you get on the main line. As you begin to cross it, the road is not visible . . . on the far side of the track. I think, in my opinion, that is where the driver's eyes would be cast once the decision is made to cross the track.

## II.

The question in this case is whether a rational jury could find an explanation of the facts which either (1) justifies plaintiff's failure to see the oncoming train and thus relieves him of negligence, or (2) makes irrelevant plaintiff's failure to see the train at some point after he started across the tracks and thus eliminates his negligence as a possible cause of the accident.

Based on the photographs of the scene of the accident and the testimony of eyewitnesses and two reconstruction experts, we believe a rational jury could find the following facts, taking plaintiff's case in its most favorable light: Plaintiff stopped, looked and listened on the west side of the passing track and neither saw nor heard a train. The train was traveling between 60 and 70 miles per hour and would cover in approximately 5 seconds the distance of 450 feet from the point plaintiff could have first seen the train to the point of impact. The passing track and the main track were 8 feet apart, and it was reasonable for plaintiff to attempt to cross the main track without stopping again since the back end of plaintiff's car would have straddled the passing track if he had stopped. Having stopped, looked and listened at the passing track, it was reasonable for plaintiff to keep his eyes ahead on the narrow gravel bridge and the descending road on the other side in order to avoid slipping off the road and becoming stuck between the tracks. Plaintiff failed to see the oncoming train because it was necessary to look ahead as he crossed the tracks. Moreover, even if plaintiff had seen the train coming at some point while crossing the passing tracks, he would have been unable to avoid the collision by stopping short of the main track, given the fact that he would have had less than 5 seconds to do so after the train was in view.

The Virginia railroad crossing cases relied upon by the defendant do not require a

directed verdict in this situation. In *Virginian Railway Co. v. Rodgers,* 170 Va. 581, 589, 197 S.E. 476, 479 (1938), the driver did not stop at the crossing, and the Supreme Court of Virginia found "that the undisputed facts and circumstances of this case . . lead irresistably [sic] to the conclusion either that Rodgers [the driver] did not look for the train as he approached the crossing, or else looked and saw it and thought that he could cross ahead of it." In *Norfolk & Western Railway Co. v. Epling,* 189 Va. 551, 556, 53 S.E.2d 817, 819 (1949), the driver apparently failed to stop at the tracks, and the court concluded that when the driver "made the right turn from the private road into the public road the train was within 900 feet of the crossing and in plain view. [The driver] could have stopped his truck almost instantly, certainly within a few feet." In *Norfolk & Western Railway Co. v. Fletcher,* 198 Va. 397, 402, 94 S.E.2d 251, 255 (1956), the driver failed to stop, look and listen before proceeding across the tracks. The court concluded "that at the speed the train was moving . . . the on-coming engine must have been in plain view when the plaintiff drove onto the track. Therefore, his statement that just before going onto the track he looked and no train was in sight cannot be true. Either he did not look immediately before going onto the track or did not look effectively. If he had looked effectively he is bound to have seen the engine which was dangerously near. . . ." Finally, in *Skinner v. Norfolk & Western Railway Co.,* 206 Va. 649, 655–56, 145 S.E.2d 170, 174 (1965), the court concluded that the driver "blindly disregarded his duty to exercise ordinary care, or to *observe the signal devices* warning him not to cross the tracks. Notwithstanding the imperative warning of the signals, and without any reasonable excuse, he placed himself in a position of danger, from which there was no escape" (emphasis added).

In the first three cases the driver failed to stop at the tracks. In none of these cases was there a reasonable justification for the driver's failure to see the oncoming train in light of the circumstances. In none

of these cases was the driver's failure to see the train, once he started across the first set of tracks, an irrelevant, noncausative factor. In none of these cases was the collision inevitable once the plaintiff stopped and then proceeded to cross two sets of tracks. We conclude, therefore, that the Virginia cases are not on point and that the District Court erred in directing the verdict in favor of the defendant.

Accordingly, the judgment of the District Court is reversed and the case is remanded for a new trial.