Terry R. WEAVER, Administrator
of the estate of Myral Weaver,
Deceased, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORP., d/b/a Amtrak, CSX Transportation, Inc., and Norfolk Southern Railway Co., Defendants.

Civ. A. No. 93–0029–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 6, 1994.

Stephen Haiden Ratliff, Cadeaux & Taglieri, Washington, DC, for plaintiff.

Aubrey Russell Bowles, III, and Aubrey Russell Bowles, IV, Bowles and Bowles, Richmond, VA, for defendants.

## *MEMORANDUM OPINION*

MICHAEL, District Judge.

Pursuant to a standing order entered on June 26, 1992, the court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his Report and Recommendation on August 9, 1994, finding that while there exists a triable issue of fact in this case with respect to the defendants' primary negligence, the plaintiff is precluded from recovering due to the contributory negligence of Myral Weaver (also "plaintiff's decedent" or "decedent"). The defendants filed

their objections thereto on August 15 and the plaintiff filed his reply and objections on August 19. Said objections having been lodged with the court in a timely and appropriate manner, this court is required to undertake a *de novo* determination. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982). Having reviewed the Report, objections, and record of proceedings in this case, the court adopts the Report and Recommendation in accordance with this Opinion.

## I.

On March 13, 1994, at 3:35 p.m., Myral Weaver, age 65, drove her car in front of a train on the way home from a day of errands. She attempted to traverse the rocky, sloped grade crossing that connects the Weaver home and the home of the Weavers' married daughter to the main road paralleling the Norfolk Southern railway line on the opposite side of the tracks. It appears that Mrs. Weaver traveled south on the main road, with the train closing in on her. She turned right off of the road, drove up the fairly steep gravel grade on the east side of the crossing, and, apparently failing to hear or see the train to her right, was crushed by the Amtrak Cardinal ("Cardinal"), piloted by a CSX crew. The train was en route from Washington to Charlottesville, and according to the engineer the train was traveling at 79 miles per hour, one mile per hour under the federal speed limit.[1] The engineer sat on the right side of the train, the opposite side from the approach of Mrs. Weaver's car.

Mrs. Weaver's son, the administrator of her estate, is now suing Amtrak, CSX, and Norfolk Southern for wrongful death. The plaintiff alleges that the companies failed to provide adequate warnings of approaching trains at the crossing, failed to maintain the crossing in a safe and proper manner, operated the train at an excessive rate of speed, failed to maintain the train under proper control, and failed to maintain a proper lookout.

In support of summary judgment, the defendants assert that the train was traveling within federal limits, which precludes a finding of negligence based on speed;[2] that the crossing is signalled by crossbucks on either side; that the train sounded its horn as it approached a public crossing 983 feet north of the Weaver crossing, as required by law, and continued to sound the statutorily required signal as it approached the Weaver crossing; that adequate sight distance was provided to the north from the east side of the crossing; that the train was burning its front light; and that its crew kept a proper lookout and applied the train's brakes once it became apparent that Mrs. Weaver was not going to stop. The defendants only object to the Magistrate's Report insofar as the report found a triable issue of fact with respect to primary negligence.

There are no eye-witnesses to support the plaintiff's allegations that the train failed to keep a proper lookout, provide a signal, maintain a proper speed, or apply its brakes. Mrs. Weaver's husband, Cecil, was home at the time that she died, but he has no knowledge of the circumstances surrounding the terrible accident. Likewise, there are no eye-witnesses to counter the depositions of the defendant's witnesses, the Cardinal's engineer and baggageman, that Mrs. Weaver failed to look or stop at the crossing.

In opposition to summary judgment, the plaintiff rests entirely on the deposition of its expert witness, Archie Burnham, who states that the crossing is ultrahazardous. P.'s Objections, Ex. 2. The expert testified that the growth of vegetation restricted sight at the crossing, the train provided insufficient audible warning of its approach, the crossing grade was too rough and steep, and the traffic control devices at the crossing were inadequate. *Id.*

The defendants served a Request for Admissions on the plaintiff, requesting that the plaintiff admit the decedent's contributory negligence and the fact that the Cardinal train blew its horn through the crossing. The plaintiff responded that he had insuffi-

---

1. *See* 49 C.F.R. § 213.9 (setting federal speed limit for Class IV track).

2. *CSX Transportation, Inc. v. Easterwood,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1994).

cient information with which to admit or deny the requests. At the hearing, the Magistrate found that the plaintiff "essentially admitted" defendants' requests for admissions, by failing to point to any contrary evidence that the decedent failed to stop or look, or that the train failed to blow its whistle. The plaintiff has objected to the Magistrate's Report on the grounds that the plaintiff's expert places the credibility of the defendants' witnesses in question and the plaintiff should not be bound by the testimony of the CSX crew, who are adverse witnesses in this case. The plaintiff argues that the expert's testimony that the crossing is ultrahazardous precludes a finding of contributory negligence.

## II.

■ Summary judgment is appropriate if there are no genuine issues of material fact from which the non-moving party could prevail. Fed.R.Civ.P. 56(c). The moving party shoulders its burden by demonstrating an absence of evidence to support the non-moving party's case, through affidavits, admissions on file, or depositions. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party must then respond, by affidavit or other verified evidence, with specific facts showing a genuine issue for trial and cannot rest on the allegations contained in the pleadings alone. *Id.;* Fed.R.Civ.P. 56(e).

■ Neither a "scintilla of evidence" advancing the plaintiff's position, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), nor counsel's argument, without evidence such as sworn affidavits attached to the objections to summary judgment, will satisfy the necessary standard for creating a triable issue, *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. In deciding a motion, the court must draw all inferences in the light most favorable to the non-moving party. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

## III.

### A.

■ Under Virginia law, contributory negligence will bar recovery in crossing accidents, *Wright v. Norfolk and Western Ry.,* 245 Va. 160, 427 S.E.2d 724 (1993), unless a crossing is "public" within the meaning of Va.Code Ann. § 56–416 (Michie 1986). If the statutory crossing provisions apply, and a train fails to abide by its duty to provide a signal of approach, comparative negligence is the rule. § 56–416. The nature of a crossing is a question of fact. *Norfolk and Western Ry. v. Fletcher,* 198 Va. 397, 94 S.E.2d 251, 254 (1956). If there is evidence that could support a finding that the Weaver crossing is public within the meaning of Va. Code Ann. § 56–416 then evidence of contributory negligence will not bar recovery.

■ The statutory duty attaches only at a public crossing, which is " 'a way open to all … without distinction for passage or repassage at their pleasure.' " *Wray v. Norfolk and Western Ry.,* 191 Va. 212, 61 S.E.2d 65, 69 (1950) (quoting 39 C.J.S. *Highways* at 909). Generally, public crossings are crossings of highways owned by the state. *See Virginia Ry. v. Rodgers,* 170 Va. 581, 197 S.E. 476, 476–77 (1938) (open crossing not public where road not improved by state). In a narrowly defined class of cases, a technically private crossing may take on the attributes of a public crossing for purposes of the statute. *See Chesapeake and Ohio Ry. v. Pulliam,* 185 Va. 908, 41 S.E.2d 54, 56 (1947); *Southern Ry. v. Abee's Adm'r,* 124 Va. 379, 98 S.E. 31, 32 (1919). These cases involve crossings frequently used by the public where the railway company has treated the crossings as public, constructing crossbucks and whistle posts; *see, e.g., Pulliam,* 41 S.E.2d at 56; *Abee's Adm'r,* 98 S.E. at 32; and where the state has taken on the duty of maintaining a private road that is open to the public, due to the road's frequent use; *Pulliam,* 41 S.E.2d at 55–56.

■ Even where a crossing is not public within the meaning of the statutes, habitual and longstanding use of a crossing by the public with the knowledge and acquiescence of a railway company may give to the passageway the attributes of a public crossing at common law and cast upon a railway the duty of exercising ordinary care for the safe-

ty of others. *Chesapeake and Ohio Ry. v. Faison,* 189 Va. 341, 52 S.E.2d 865, 866 (1949); *Fletcher,* 94 S.E.2d at 254. Where only a common law duty exists, comparative negligence is inapplicable and evidence of contributory negligence will bar recovery. *Id.* (public nature of crossing imposes duty of due care on railway but contributory negligence bars recovery since crossing not public within meaning of state statute).

■ Mrs. Weaver lived in her house and used the crossing for most of her life. Her use was "habitual, general and of long standing, and was known to the employees of the railway company." *Faison,* 52 S.E.2d at 866. Accordingly, the railway clearly owed her a duty of due care at common law. This conclusion is supported by the facts that defendant Norfolk and Southern constructed crossbucks at the crossing, maintained the crossing, and, according to the defendants, the Cardinal regularly blew its whistle as it sped by the Weaver property.

■ Whether the crossing is public within the definition of Va.Code Ann. § 56–416 is another matter, however. The crossing serves only the homes of the Weavers and their married daughter, linking the homes to the state road that parallels the tracks on the opposite side from the Weaver property. The plaintiff pointed to no evidence establishing that the grade crossing is used by a sufficient number of people outside of these households to justify treating it as a statutory public crossing. The fact that the state does not maintain the crossing and that it serves only two households, in the absence of any other evidence to the contrary, militates against treating the crossing as public within the meaning of § 56–416. Accordingly, comparative negligence does not apply. If plaintiff's decedent was contributorily negligent as a matter of law, then summary judgment must be granted to the defendants.

### B.

■ With rare exception, when an individual runs in front of a train in Virginia contributory negligence will preclude recovery. Virginia places the primary responsibility of avoiding accidents at train crossings on the driver of the car, in recognition of the fact that the driver is in the best position to avoid an accident in the first place. As the Supreme Court of Virginia recently stated, "trains run on fixed tracks and their course cannot be altered; no such steel-bound limitation controls the movement of motor vehicles." *Wright,* 427 S.E.2d at 730. The legislature has only altered this rule at public crossings, which generally are more heavily used, where the speeds of cars are greater, and where the danger of accidents increases to the point where the railway company must bear some of the burden of accident prevention. In such cases, the comparative negligence provisions of § 56–416 encourage railroad companies to increase their investment in crossing safety. Since this court is not in the position to question the equity (or efficiency) of the Virginia contributory negligence rule that applies at all non-statutory public crossings, the plaintiff faces a substantial obstacle to recovery.

■ The Virginia courts repeatedly have said that "a railroad track is a proclamation of danger and the operator of a vehicle approaching a grade crossing 'is required to look and listen at a time and place when both looking and listening will be effective,' intelligently using both eyes and ears." *Wright,* 427 S.E.2d at 730 (quoting *Norfolk and Western Ry. v. Epling,* 189 Va. 551, 53 S.E.2d 817, 820 (1949)). If a crossing is not hazardous, an individual who drives onto the tracks in front of a train in plain view is held to constructive knowledge of the train's approach. *Fletcher,* 94 S.E.2d at 255 (citing *Epling,* 53 S.E.2d at 820). If a crossing is hazardous and the automobile driver has knowledge of this fact, the driver is held to a higher duty of care. *Wright,* 427 S.E.2d 724, 730 (citing *Norfolk and Western Ry. v. Greenfield,* 219 Va. 122, 244 S.E.2d 781, 786–87 (1978)).

■ The burden of showing the decedent's contributory negligence rests on the defendants, unless negligence can be established by the plaintiff's own evidence or can be fairly inferred from all of the circumstances of the case. *Greenfield,* 244 S.E.2d at 786. The decedent is given the " 'presumption, though slight' that [she] exercised

due caution for [her] own safety." *Id.* at 787 (quoting *Norfolk and Portsmouth Belt Line Railroad v. Freeman,* 192 Va. 400, 64 S.E.2d 732, 736 (1951)).

■ A clear inference of contributory negligence arises from the facts of this case. Irrespective of whether the Magistrate properly deemed admitted the requests for admissions served on the plaintiff, the plaintiff can produce no direct evidence that the train failed to provide a proper signal, keep a proper speed, or keep a proper lookout. The plaintiff states that the train *may* not have blown its whistle and raises the *possibility* that the train exceeded 79 miles per hour.[3] In the absence of direct testimony or other verified evidence to the contrary, the court must give credence to the sworn testimony of the defendants' witnesses that the train blew its horn and kept a proper speed. Fed. R.Civ.P. 56; *see also Greenfield,* 244 S.E.2d at 785–86 (mere bare negative testimony that witnesses failed to hear train signal entitled to no weight in the presence of train crewman's affirmative evidence to the contrary). Neither is there any evidence that the train operators failed to keep a proper lookout. The train applied its brakes, but too late. This fact does not overcome the decedent's negligence. The engineer had a right to assume that the decedent's car would stop before it proceeded across the tracks. *Nichols v. Southern Ry.,* 187 Va. 89, 45 S.E.2d 913, 917–18 (1948). There is simply nothing the engineer could do once Mrs. Weaver drove into the train's path.

The plaintiff also points to the steep grade of the crossing, the limited sight distances caused by overgrown vegetation, and the testimony of the expert that the crossing is ultrahazardous. Without evidence establishing that the train failed to blow its horn or exercise due care, this evidence only goes to the primary negligence of Norfolk and Southern, the owner of the tracks. Moreover, since Mrs. Weaver was familiar with the crossing, which she used for years without incident, she is held to a duty of care

corresponding to the crossing's dangerous condition. *Wright,* 427 S.E.2d at 730; *Greenfield,* 244 S.E.2d at 786–87.

The facts in *Wright* are closely analogous to those present here. The plaintiff in *Wright* approached a hazardous crossing with which he was "thoroughly familiar." *Id.* The configuration of the approach to the unsignalled crossing obstructed the plaintiff's view. *Id.* The Supreme Court of Virginia upheld a lower court ruling of contributory negligence as a matter of law because the plaintiff did not approach the crossing in a way that would have maximized his view, or stop long enough to roll down his car windows and listen for the train's approach. *Id.* Considering the hazards, the plaintiff either failed to adequately look, or if he looked, negligently failed to discover the train. *Id.* Either way, "he was the architect of his own misfortune." *Id.*

The court has been presented with no evidence to distinguish the case at bar from *Wright.* The evidence establishes that the train provided a warning and Mrs. Weaver negligently drove out in front of the train at a hazardous crossing with which she was "thoroughly familiar." *Id.* The court cannot know why Mrs. Weaver failed to notice the train, but must judge the case on the basis of the evidence submitted by the parties. Accordingly, the defendants' motion for summary judgment must be granted.

## IV.

For the reasons stated in this Memorandum Opinion, the contributory negligence of plaintiff's decedent bars recovery. The court shall grant summary judgment to the defendants.

An appropriate order shall this day issue.

## *ORDER*

For the reasons set forth in the accompanying Memorandum Opinion, it is this day

---

3. Defendant Amtrak has not been able to find the speed tapes that record train speed for purposes of evaluating accidents like this one. While the court is extremely troubled by this fact, which could cause a jury to disregard the testimony of the train's engineer that the train was operating within federal limits, this is not enough to overcome the lack of other evidence on the issue of contributory negligence. Mere possibilities are not enough to establish a triable case.

ADJUDGED AND ORDERED

as follows:

1. The Magistrate Judge's report in this case, filed on August 9, 1994, shall be, and it hereby is, adopted in accordance with the accompanying Memorandum Opinion;

2. Defendants' Motion for Summary Judgment shall be, and it hereby is, granted;

3. This case shall be, and it hereby is, dismissed and stricken from the docket of this court.