## Richmond

.Norfolk and Western Railway Company .v. Naoma B. Godsey Gilliam.

Norfolk and Western Railway Company v. Lloyd McDaniel, Administrator of the Estate of Billy Ray McDaniel, Deceased.

January 18, 1971.

Record Nos. 7210 and 7211.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Cochran and Harman, JJ.

*William Rosenberger, Jr.,* for plaintiff in error in Record Nos. 7210 and 7211.

*Paul Whitehead,* for defendant in error in Record Nos. 7210 and 7211.

HARMAN, J., delivered the opinion of the court.

The decedent, Billy Ray McDaniel, an infant over fourteen, and Naoma B. Godsey Gilliam, his great grandmother, were both riding in a 1963 Ford Falcon station wagon that was struck by defendant's freight train July 5, 1965, at the Sixteenth Street grade crossing in the Town of Glasgow, Virginia. Lloyd McDaniel, Administrator of the Estate of Billy Ray McDaniel, brought an action against the Norfolk and Western Railway Company to recover damages for death by wrongful act. That action was consolidated for trial with the action of Naoma B. Godsey Gilliam for damages for personal injury.

Two consolidated trials ensued. At the first trial jury verdicts for plaintiffs were rendered. These verdicts were set aside and a new trial was awarded on defendant's motion because the jury was improperly instructed.[1] At the second trial the court held that the comparative negligence doctrine embodied in Code §§ 56-414 and 56-416 was applicable, and the jury was so instructed. Verdicts were again returned for plaintiffs and final judgments were entered on these verdicts by the trial court. We granted defendant a writ of error and *supersedeas* in each case.

The collision occurred at approximately 9:40 a.m. on a clear day at a point where defendant's tracks cross Sixteenth Street in the Town of Glasgow.

Sixteenth Street is a dirt road approximately 15 feet wide that is perpendicular to defendant's track. This track was described by the witnesses as running north-south.

The Sixteenth Street crossing has a macadam surface 12.3 feet wide that extends approximately 20 feet west of the west rail and 20 feet east of the east rail. A vehicle approaching the crossing from the west would encounter a 5.5 percent grade 100 feet from the crossing. Sixty feet west of the crossing the grade is 5.6 percent and 37 feet west of the crossing the grade is 11 percent, the maximum. The Sixteenth Street crossing is just inside the corporate limits of the Town of Glasgow. The track south of the Sixteenth Street crossing is straight for 5,377 feet, more than a mile.

---

[1] At the first trial a comparative negligence instruction was given pursuant to Code §§ 56-414 and 56-416 and instructions were also given that contributory negligence would bar plaintiff's recovery.

Defendant's train was northbound at the time of the collision. The train consisted of two diesel engines, eight freight cars and a caboose. The total length of the train was 463.5 feet. The diesel engines were more than 15 feet high and the headlight on the first engine was in operation.

Defendant's right of way line is 33 feet west of the center line of the track. It was uncontroverted that an eastbound motorist approaching the Sixteenth Street crossing on July 5, 1965, could observe defendant's track 150 feet straight ahead and that the same motorist's view of defendant's track south of the crossing would increase from 684.5 feet when 25.5 feet west of the west rail to one mile when 11.5 feet west of the west rail. The evidence was that all occupants of the station wagon had frequently crossed the crossing and were familiar with it.

The Falcon station wagon was driven by Gloria Rhodes McDaniel, decedent's mother and Mrs. Gilliam's granddaughter. Decedent's brothers, George and Larry McDaniel, were also riding in the station wagon. Mrs. Gilliam was seated next to the right front door, decedent next to the right rear door, and Larry next to the left rear door. George was seated on the back seat between Larry and decedent.

The driver testified that she stopped the station wagon as close as she could get to defendant's track, looked and listened, and then proceeded slowly onto the track. She stated that she did not see defendant's train until she was actually on the track and that no horn was blown or bell rung. Her testimony in these respects was corroborated by that of Larry McDaniel and Mrs. Gilliam. George McDaniel testified that he had no recollection of the collision.

Defendant's engineer and fireman both testified that the horn was blown and the bell was rung for the crossing. The fireman, who was seated on the west side of the cab, observed the station wagon approach the crossing. He testified that the station wagon did not stop or slow down and when it became apparent that the station wagon was not going to stop he informed the engineer and the emergency braking was applied.

Decedent's mother described him as a boy of normal intelligence who was full of energy. She testified that all her sons had walked over the Sixteenth Street crossing and that she had warned them of the danger. She stated that decedent knew that the track was dangerous.

Shortly before the collision the station wagon stopped on Sixteenth

Street a short distance west of defendant's track to pick up George McDaniel who was walking west on Sixteenth toward Mrs. Gilliam's home. When the station wagon stopped decedent got out to let George in. Neither the decedent nor Mrs. Gilliam attempted to warn the driver of the approaching train before the station wagon was driven onto the track when their view of the track to the south was more than a mile.

Mrs. Gilliam testified on direct examination that after the station wagon stopped at the crossing "I didn't do anything but sit there." She testified that her hearing was normal and there is no evidence that her vision was impaired.

■ We must first decide whether the case was properly submitted to the jury under the comparative negligence doctrine embodied in Code §§ 56-414[2] and 56-416[3]. These provisions are closely related and must be read and construed together. *Norfolk & Western Ry. Co.* v. *White*, 158 Va. 243, 255, 163 S.E. 530, 534 (1931). The comparative negligence provision contained in Code § 56-416 is operable only if the warnings required by Code § 56-414 are not given, *Chesapeake & Ohio Ry. Co.* v. *Hanes, Adm'r*, 196 Va. 806, 815, 86 S.E.2d 122, 127 (1955); and if the failure to give those warnings is a proximate cause of a collision, *e.g.*, *Skinner* v. *Norfolk & Western Ry. Co.*, 206 Va. 649, 653-54, 145 S.E.2d 170, 173 (1965).

Code § 56-414 requires warnings to be given by trains approaching public grade crossings "outside of incorporated cities and towns." The warnings required by Code § 56-414 are not applicable to public

---

[2] § 56-414. *Bell and whistle or horn; when sounded.*—Every railroad company shall provide each locomotive or diesel engine passing upon its road with a bell of ordinary size and steam whistle, or horn, and such whistle or horn shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any public highway or crossing, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require.

[3] § 56-416. *Effect of failure to give statutory signals.*—If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway not protected with an automatically operating gate, operating wigwag signal or other operating electrical or operating automatic crossing protection device, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such travelers, nor for any injury to or the destruction of property in his charge, where such injury, death, or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively; but the failure of the traveler to exercise such care may be considered in mitigation of damages.

grade crossings within the corporate limits of cities and towns. *Norfolk & Western Ry. Co. v. Fletcher*, 198 Va. 397, 400, 94 S.E.2d 251, 254 (1956); *Atlantic Coast Line R. R. Co. v. Clements*, 184 Va. 656, 665, 36 S.E.2d 553, 557 (1946); *Norfolk & Western Ry. Co. v. Wilkes', Adm'r*, 137 Va. 302, 306, 119 S.E. 122, 124 (1923). *See also Norfolk & Western Ry. Co. v. Hagy*, 201 Va. 183, 187, 110 S.E.2d 117, 180 (1959); *Southern Ry. Co. v. Davis*, 152 Va. 548, 551, 147 S.E. 228 (1929). Therefore, the warnings required by Code § 56-414 had no applicability to the Sixteenth Street crossing.

■ Code § 56-414 permits a city or town to enact an ordinance regulating the warnings to be given by trains approaching public grade crossings within their corporate limits. Noncompliance with such an ordinance will invoke the comparative negligence provision of Code § 56-416, provided such noncompliance is a proximate cause of a collision. *Norfolk & Portsmouth Belt L. R. R. Co. v. C. F. Mueller Co.*, 197 Va. 533, 536, 90 S.E.2d 135, 138 (1955); *Wray v. Norfolk & Western Ry. Co.*, 191 Va. 212, 216, 61 S.E.2d 65, 67 (1950); *Norfolk & Western Ry. Co. v. White, supra*, 158 Va. at pp. 251-53, 163 S.E. at pp. 533-34. There is no evidence that the Town of Glasgow has enacted such an ordinance. *See* Code § 8-270; *cf.* Code § 8-273.

Since the warnings set forth in Code § 56-414 were not required and the evidence fails to disclose an ordinance enacted pursuant to that section requiring approaching trains to give warnings at public crossings in the Town of Glasgow, the comparative negligence provision of Code § 56-416 is not applicable to this case. Therefore we hold that the case was submitted to the jury on improper instructions and for that reason the judgments entered on the verdicts must be reversed.

■ The absence of a controlling statute or ordinance does not relieve defendant of the common law duty to give adequate, reasonable and timely warning of the approach of its train to a public grade crossing. *Norfolk & Western Ry. Co. v. Fletcher, supra*, 198 Va. at p. 400, 94 S.E.2d at p. 254; *Atlantic Coast Line R. R. Co. v. Clements, supra*, 184 Va. at p. 665, 36 S.E.2d at p. 557. Where the common law duty to warn applies, however, contributory negligence may bar a plaintiff's recovery. *Norfolk & Western Ry. Co. v. Hagy, supra*, 201 Va. at p. 187, 110 S.E.2d at p. 180.

Assuming, but not deciding, that defendant failed to meet its common law duty to give adequate, reasonable and timely warning of the approach of its train, and that such a failure was a proximate cause of the collision, we hold that the decedent, Billy Ray McDaniel, and

Naoma B. Godsey Gilliam were both contributorily negligent as a matter of law and that their negligence bars a recovery. *Mann, Adm'x v. Norfolk & Western Ry. Co.*, 199 Va. 604, 101 S.E.2d 535 (1958); *Butler v. Darden*, 189 Va. 459, 53 S.E.2d 146 (1949). They were in a better position to see defendant's train than was the driver with whom they were riding; they were awake and in possession of their faculties; there was nothing for them to do but to look and listen. In these circumstances they were charged with the duty of exercising reasonable care for their own safety. Reasonable care entails looking and listening when it will be effective so that the driver can be warned. *Mann, Adm'x v. Norfolk & Western Ry. Co., supra,* 199 Va. at p. 611, 101 S.E.2d at p. 540.

*Reversed and final judgments.*