## Mattie B. Wright, et al., etc.

### v.

## Norfolk and Western Railway Company

Record No. 921018

February 26, 1993

Present: All the Justices

*Thomas L. Phillips, Jr.; S. J. Thompson, Jr. (Thomas L. Phillips; Joy Lee Price; Phillips, Phillips, Phillips & Morrison; Caskie & Frost*, on briefs), for appellants.

*John D. Eure (James F. Johnson; Joseph A. Matthews, Jr.; Johnson Ayers & Matthews*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

On May 12, 1988, Riley E. Wright was severely injured in a collision between the dump truck he was operating and a Norfolk and Western Railway Company train at a public crossing. Wright's guardians filed this negligence action against N & W seeking damages on behalf of their ward, a disabled person. A jury returned a verdict in favor of the plaintiffs for $4 million.

Sustaining a post-trial motion, the court below set the verdict aside and entered judgment for the defendant. We awarded the plaintiffs an appeal and also agreed to consider the defendant's assignments of cross-error. The principal issue on appeal, however, is whether the trial court correctly ruled that Wright was guilty of contributory negligence as a matter of law.

Although the trial court set the verdict aside, we shall accord the plaintiffs, the recipients of the jury verdict, the benefit of any substantial conflicts in the evidence and of all reasonable inferences that may be drawn from the facts. *Holland* v. *Shively*, 243 Va. 308, 309, 415 S.E.2d 222, 223 (1992). The evidence is virtually undisputed.

The accident occurred in the town of Brookneal where Maddox Street crosses N & W's main line. The track runs north and south, and the two-way street runs generally east and west. U.S. Highway

501, a north-south roadway, closely parallels the track to the east. At the crossing, Maddox Street intersects Route 501 about 20 feet east of the track and ends there.

At the scene, the terrain generally is level, and the track is straight for 2,150 feet north from the crossing. Maddox Street is not perpendicular to the track; it angles to the southwest from its intersection with Route 501.

The crossing was marked by crossbucks (signal boards) and an advance railroad warning sign ("a yellow sign that had RR on it"). There were no other signals, warning devices, or traffic controls in place at or near the crossing.

The collision took place on a Thursday about 12:45 p.m. The weather was clear, hot, and humid. The roadways were dry.

At the time, the train, composed of 17 cars loaded with wood chips and pulpwood, was moving southbound through Brookneal. Travelling approximately 34 miles per hour, the train approached the crossing with the headlight burning on the engine. Also, an air-operated bell was ringing continuously. In addition, an air-operated whistle was sounding "two longs, a short and a long."

At the same time, Wright, who was operating his employer's truck alone, was proceeding southbound on Route 501 approaching the crossing. Wright's destination was a lumber yard located just west of the crossing on Maddox Street.

The vehicle was a tandem dump truck with "front axles and . . . a dual axle at the back." Its overall length was "around 25 feet." The unit included a solid metal dump body that "sits approximately two inches behind the cab" preventing the operator from seeing "out of" the rear cab window. The vehicle had "regular West Coast" rear view mirrors "set to show what's behind the truck." The truck, in good operating condition, was equipped with an air conditioner, an AM/FM stereo radio, and a CB radio. It had a capacity of 53,500 pounds and was loaded with gravel.

Wright, age 36 and an experienced dump truck operator, had lived less than a mile from the crossing for ten years. On the day of the accident, he "had hauled . . . four loads of gravel" over the crossing to the lumber yard prior to the incident; the previous day, he had delivered five loads to the same destination.

Eyewitness testimony revealed that Wright approached the crossing behind another southbound dump truck. The first truck turned from Route 501 and stopped on Maddox Street east of the crossing. Wright stopped his truck behind the first vehicle. After the first

truck moved over the crossing, clearing the track, Wright drove his truck onto the track in front of the train when the train's engine was less than ten feet from the truck. The truck travelled at a slow, steady speed, less than five miles per hour, to a point where the train engine struck the truck in the center of its right side, demolishing it and injuring Wright.

One eyewitness pointed out that there was "a slight incline from 501 up to the crossing." He stated that "as the truck was coming off of 501 onto Maddox the front end of the truck sort of shifted downward as if he were [braking] or changing gears." The witness said, "I had the thought he was going to stop and then the truck, the front end, raised up as he accelerated onto the tracks." The train engineer testified that "just before hitting the edge of the crossing, like six feet, the truck whipped in front of me. It was no time to do anything."

The witnesses did not see any brake lights "come on" on the truck before the impact. The window on the right side of the truck's cab was closed at the time of the collision. Although Wright did not testify due to his disability, his employer testified that Wright, whose hobby was country music, normally operated the truck's air conditioner on hot days and normally "kept his radio on and CB on."

Expert testimony offered by the plaintiffs established that the crossing was not "reasonably safe" and that it was "ultradangerous, or an ultrahazardous crossing." This opinion was based upon "the sight distance available to the motorist, the geometry of the crossing, the type and mix of the traffic that uses the crossing, the speed of the trains, the condition of the tracks and crossing." According to the expert, "All of those in conjunction with the type of protection afforded at the crossing, which is essentially the cross bucks, made it an ultrahazardous crossing."

Another expert opined that, because of the angle of Maddox Street relative to the track, the length of the truck, and the radius of the turn, Wright's view north on the track was severely limited as he turned onto the crossing. This was because the driver was unable, without making a wide turn across the center line of Maddox Street, to bring the truck to a position perpendicular to the track to have a clear view north. Instead, because of the "geometry of that crossing," Wright could only lean forward in his driver's seat and try to look through the right side window, his view through the rear window of the cab being completely blocked.

The expert also measured scientifically the sound level inside a similar truck's cab. He determined, using various assumptions (*e.g.* air conditioner off or on) that "because of the limited field of view to the right-hand side from this truck and the distances involved and the geometry of the crossing, it was physically impossible for Riley Wright to have heard or seen that train as he approached the crossing in time to avoid the collision, assuming that they both happened to be there at the time, which they did, of course."

Prior to trial, the defendant filed a motion contending that federal law preempted the plaintiffs' claim that the Maddox Street crossing was equipped with inadequate crossing protection devices. The trial court took this motion under advisement.

During trial, the defendant moved the court to strike the plaintiffs' evidence at the conclusion of the plaintiffs' case-in-chief. The grounds of the motion were that the plaintiffs failed to establish, prima facie, the defendant's primary negligence, and that the plaintiffs' own evidence established Wright was guilty of contributory negligence as a matter of law. This motion was overruled. The trial court, after stating, "I'm very troubled, very troubled by Mr. Wright's conduct," decided to allow the contributory negligence issue to go to the jury. The trial court noted this Court's admonition: "It is a drastic measure to strike the evidence at the end of a plaintiff's case." *Higgins* v. *Bowdoin*, 238 Va. 134, 141, 380 S.E.2d 904, 908 (1989). The trial court also mentioned that plaintiffs' counsel had represented that approximately $45,000 had been expended in connection with the preparation and trial of the case. Additionally, the court noted that it still had the preemption issue under advisement.

At that stage of the trial, the court also ruled there was no merit to the plaintiffs' claim that the defendant was guilty of willful and wanton misconduct; the court stated it would not instruct on that issue.

At the conclusion of all the evidence, the plaintiffs moved to strike the defendant's evidence on the ground that primary negligence had been proved as a matter of law. The defendant renewed its previous motion to strike. The trial court overruled both motions, stating "there's a strong likelihood of contributory negligence, but I'm not certain of that."

After verdict, the court considered memoranda of law and oral argument on defendant's motion to set aside. For the first time, during a hearing on the post-trial motion held three and one-half

months after verdict, the plaintiffs asserted that the defendant had waived its right to rely on the proposition that Wright was guilty of contributory negligence as a matter of law. After further briefing, the trial court, in a letter opinion, sustained the defendant's motion. The court ruled that no waiver had occurred and that Wright was guilty of contributory negligence as a matter of law. In addition, the court ruled against the defendant on the preemption issue.

On appeal, the plaintiffs contend that the trial court erred in its ruling on the contributory negligence issue, erred in failing to find waiver, erred in refusing to instruct on willful and wanton negligence, and erred in excluding evidence that the defendant had actual notice that the crossing was ultrahazardous. The defendant assigned cross-error to the trial court's refusal to strike the plaintiffs' evidence on the contributory negligence issue both at the conclusion of the plaintiffs' case-in-chief and at the conclusion of all the evidence. The defendant also assigned cross-error to the trial court's refusal to hold that federal preemption applied.

Initially, we must dispose of the waiver issue, the focus of which is on the granting of Instruction 1B. The issue arises in the following manner.

The sequence of the procedural events in this case is important to the consideration of waiver. During the fourth day of a five-day trial, after the trial court had denied the defendant's motion to strike made at the conclusion of the plaintiffs' case-in-chief, and in the midst of the presentation of the defendant's evidence, the trial court commenced consideration of proposed instructions tendered by the parties. This was an effort to expedite the trial and to accommodate scheduling of some witnesses.

During this discussion, plaintiffs' counsel tendered a two-paragraph instruction labelled "1B," dealing with the burden of proof on the issue of contributory negligence and, in the second paragraph, stating that the defendant could not rely on contributory negligence as a defense if it was guilty of willful and wanton negligence.

Because of its previous decision not to instruct on willful and wanton negligence, the trial judge stated: "So paragraph one will stay in 1B and that would be the only part I would give over objection." Plaintiffs' counsel said: "But, Judge, we want to offer it as is." The court responded: "Oh, sure. I'm going to refuse it . . . . Refuse the second paragraph." A brief discussion ensued about

another instruction after which the trial judge asked one of defendant's counsel: "Do you quarrel with Instruction 1B, paragraph one?" to which counsel responded: "No, sir."

Later, during the same interruption of the taking of evidence, Instruction 1B had been retyped without the second paragraph and the trial judge distributed copies of the retyped instruction to counsel. The judge, addressing plaintiffs' counsel said: "Now, other than the objections noted to my striking paragraph two, Mr. Phillips, you offer this?" Plaintiffs' counsel answered: "Yes, sir." The judge said: "I'll give that then." Addressing the defendant's attorney, the judge said: "You don't have any objection to it as given, do you, 1B?" to which the defendant's attorney responded: "No, sir. My objection was to the second paragraph."

As given, Instruction 1B provided:

"The Railroad claims contributory negligence as a defense. It has the burden of proving by the greater weight of the evidence that Riley Wright was negligent and that this negligence was a proximate cause of Riley Wright's injuries. Contributory negligence may be shown by the Railroad's evidence or by Riley Wright's evidence."

After this initial discussion of the instructions, the evidentiary portion of the trial continued, at the conclusion of which there was a further discussion of the instructions. When this discussion terminated, and before the trial court instructed the jury, the defendant renewed its motion to strike the plaintiffs' evidence made at the conclusion of the plaintiffs' case, one ground being that Wright was guilty of contributory negligence as a matter of law.

■ The plaintiffs argue that the "trial court erred in failing to hold that the defendant waived the defense of contributory negligence as a matter of law by failing to object to Instruction 1B." We do not agree. Waiver has not been established.

■ Recently, we addressed procedural waiver in a context similar to this case. In *Weidman* v. *Babcock*, 241 Va. 40, 400 S.E.2d 164 (1991), in which a party had endorsed a final order merely as "Seen," we rejected a procedural waiver argument. There we said: "The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals."

*Id.* at 44, 400 S.E.2d at 167. We pointed out: "In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." *Id.* (citing *Hilton* v. *Fayen*, 196 Va. 860, 866, 86 S.E.2d 40, 43 (1955)).

The sequence of the procedural events and the circumstances of the present case clearly demonstrate that the trial court was afforded the opportunity to rule intelligently on the issue of Wright's contributory negligence. Likewise, plaintiffs were given adequate opportunity to address that issue.

From the beginning of this litigation, when the defendant pled the affirmative defense that Wright's negligence was the sole proximate cause of the accident, the defendant consistently has maintained that no jury issue was presented on that question. This position was taken throughout the trial, including when the motions to strike were made during trial, one made after the discussions on the instructions, and in the motion to set the verdict aside. Taken in context, the responses of the defendant's attorney clearly indicate that he voiced no objection to the *form* of Instruction 1B, and did not indicate any *waiver* of the issue.

As we have said, the purpose of the waiver rule, as applied to procedural steps during a trial, as well as the purpose of our contemporaneous objection rule, Rule 5:25, mainly is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. This is what this trial judge, for whose very benefit the rule is enforced, had to say in ruling there had been no waiver: "It was clear to me that the issue of contributory negligence was of paramount importance throughout the trial, and I believe it was spoken to at every meaningful stage of the trial." Continuing, the judge said that when he overruled the defendant's motions to strike, "I stated unequivocally that while I felt that the defendant was probably correct, the case would be submitted to the jury on the issue of contributory negligence and would be subject to further review by me, if necessary, after jury verdict." The judge further stated, "Contrary to the language in *Hilton* v. *Fayen*, . . . I do not believe that the defendant invited this court to commit error and now complains of it. For me to rule that defendant waived objection to the contributory negligence issue would require the harshest and most technically narrow interpretation of the law of waiver." We are fully in accord with the trial court's comments. *See Jimenez* v. *Commonwealth*, 241 Va. 244, 402 S.E.2d 678

(1991); *Smith* v. *Combined Ins. Co.*, 202 Va. 758, 120 S.E.2d 267 (1961).

The plaintiffs contend that the "situation presented by this appeal is indistinguishable from that in" *Spitzli* v. *Minson*, 231 Va. 12, 341 S.E.2d 170 (1986). We disagree; *Spitzli* is not controlling.

In *Spitzli*, a legal malpractice action seeking damages as the result of the defendant's negligence in failing to register certain condominium units owned by the plaintiffs, this Court affirmed a judgment in favor of the plaintiffs. Relying on *Hilton* v. *Fayen, supra*, and *Godsey* v. *Tucker*, 196 Va. 469, 84 S.E.2d 435 (1954), we held that the defendant waived "any contention that the trial court erred in not ruling as a matter of law upon the issues of contributory negligence and proximate cause." *Spitzli*, 231 Va. at 18, 341 S.E.2d at 173. There, those issues were submitted to the jury "under instructions granted the plaintiffs without any objection from the defendant." *Id.* at 17, 341 S.E.2d at 173. In that case, the defendant moved to strike the evidence both at the conclusion of the plaintiffs' case and at the close of all the evidence, and moved to set aside the verdict in favor of the plaintiffs.

We analyze *Spitzli* against the background of the cases upon which we then relied. In *Hilton*, a defendant both agreed and failed to object to rulings of the trial court and to the granting of a crucial instruction. On appeal, the defendant contended that the trial court committed error in granting the instruction. This Court said that "parties cannot invite the court to commit an error, and then complain of it. Right or wrong, the instruction given in this case became the law of the case on that point, and was binding upon both the parties and the jury." *Hilton*, 196 Va. at 867, 86 S.E.2d at 43. The Court also said that "when defendant failed to object to the instruction submitting the entire case to the jury, and failed to move the court to set aside the verdict and grant a new trial, she waived her right to assign error under Rule of Court 1:8 [now Rule 5:25]." *Id.* at 867, 86 S.E.2d at 43-44.

In *Godsey*, defendant contended on appeal that the trial court erred in refusing to set aside a verdict in a damage suit arising from a motor vehicle collision. The plaintiff husband, as personal representative of his wife's estate, brought the action for his wife's wrongful death in a collision between vehicles operated by the husband, in which the wife was riding, and the defendant. The defendant argued that the trial court should have set aside a verdict in favor of the husband because the husband was guilty of contributory

negligence and thus barred from participating in any recovery for his wife's death. The trial court had granted an instruction permitting the jury to include the husband in the apportionment of the verdict. Noting that the defendant made no objection to the instruction, this Court said the "instruction, therefore, became the law of the case on that point" and that defendant "cannot now be heard to say that a verdict arrived at in accordance with it must be set aside." *Godsey*, 196 Va. at 475, 84 S.E.2d at 439.

■ The consistent thread that runs through *Spitzli*, *Godsey*, and *Hilton* is that a litigant will not be permitted to invite a trial court to commit error, either through agreeing or failing to object, and then be permitted to successfully complain of such error on appeal. But that is not what happened here. This record affirmatively establishes, unlike the three cases just discussed, that the defendant did not invite the trial court to commit error. Indeed, after the discussion of the instructions and before the trial court charged the jury, the defendant renewed its motion to strike the plaintiffs' evidence on the ground that Wright was guilty of contributory negligence as a matter of law. And, in none of the three cases reviewed, as here, was there a positive expression from the very person for whose benefit the rule is established, the trial judge, that the defendant had not invited error.

■ We turn now to the merits of the contributory negligence issue, the jury having settled the issue of primary negligence against the defendant. At trial, a defendant has the burden to prove by the greater weight of the evidence that the plaintiff was negligent and that such negligence was a proximate cause of the plaintiff's injuries. Contributory negligence, however, may be shown by the defendant's evidence or by the plaintiff's own evidence.

■ On appeal, a defendant's burden is heavier; the defendant must show that there is no conflict in the evidence on contributory negligence, and that there is no direct and reasonable inference to be drawn from the evidence as a whole to sustain a conclusion that the plaintiff was free from contributory negligence. *Kelly* v. *Virginia Elec. & Power Co.*, 238 Va. 32, 39, 381 S.E.2d 219, 222-23 (1989).

■ As he approached the crossing, Wright "had the duty to look and listen with reasonable care; he did not have the absolute duty to discover the presence of the train, unless by so looking and listening he was bound to have discovered it." *Norfolk & W. Ry. Co.* v. *Greenfield*, 219 Va. 122, 132, 244 S.E.2d 781, 786-87

(1978). Repeatedly, we have said that a railroad track is a proclamation of danger and the operator of a vehicle approaching a grade crossing "is required to look and listen at a time and place when both looking and listening will be effective," intelligently using both eyes and ears. *Norfolk & W. Ry. Co.* v. *Epling*, 189 Va. 551, 557, 53 S.E.2d 817, 820 (1949). Trains run on fixed tracks and their course cannot be altered; no such steel-bound limitation controls the movement of motor vehicles. *Id.* When a vehicle operator "drives blindly upon a grade crossing, whether his view is obstructed or unobstructed, and takes no precaution for his own safety and is injured, his negligence precludes recovery." *Id.* Indeed, "the greater the danger at a particular crossing, the greater the vigilance which is required by the public highway traveler." *Greenfield*, 219 Va. at 133, 244 S.E.2d at 787.

There is no conflict in the evidence on the issue of contributory negligence. And, there are no direct and reasonable inferences to be drawn from the whole evidence to sustain a conclusion that Wright was free of contributory negligence. Rather, when the evidence is viewed in the light most favorable to the plaintiffs, reasonable persons could not differ in concluding that Wright was guilty of negligence as a matter of law that proximately contributed to the accident and his injuries.

Wright was thoroughly familiar with the crossing, both as the result of living near it and from having traversed it in his truck on nine occasions during a two-day period before the accident. He was aware of the fact that he would have to rely on his senses of sight and hearing to be aware of an approaching train, because of the absence of automatically operated warning devices to remind him. He was aware of the limitations to sight and hearing posed by the configuration of the cab of his truck and by the angle at which Maddox Street ran southwest from Route 501. Yet, despite all these hazards confronting him, Wright drove his truck from a stopped position of safety onto the crossing directly in front of the train when its engine was less than ten feet away.

The expert testified that it was "impossible" for Wright to have heard or seen the train. But, he was not forced to approach the crossing with his right window closed, and presumably with his air conditioner and radio operating. He could have opened his window after his truck had been loaded and before he left the quarry, knowing the dangers to be encountered at the crossing. He could have moved onto Maddox Street and the crossing by making a wider

right turn, thus bringing his truck to an attitude with relation to the crossing that he could see clearly north along the track. Obviously, Wright did none of these things, and caused this unfortunate accident.

 The only conclusion to be drawn from the whole evidence is that Wright either failed to look and listen with reasonable care, or if he did so look and listen, he failed to discover the immediate presence of the train. In either event, he was the architect of his own misfortune. Thus, we hold that the trial court properly set the verdict aside on the ground that Wright was guilty of contributory negligence as a matter of law.

 In conclusion, we reject the plaintiffs' contentions that the trial court erroneously refused to instruct on willful and wanton negligence, and that the trial court erroneously excluded evidence that the defendant had actual notice of the ultrahazardous nature of the crossing. The evidence was insufficient to support an instruction on willful and wanton misconduct. On the notice question, the plaintiffs sought to present data collected pursuant to a federal grade crossing safety program. Federal law specifically precludes use of such data in state and federal courts. 23 U.S.C. § 409 (Supp. 1992).

 And, because we have ruled in favor of the defendant on the contributory negligence issue, we do not reach the federal preemption question.

Accordingly, we hold that the trial court committed no error, and the judgment below will be

*Affirmed.*