Barbara G. CHANDLER, Plaintiff,

v.

The NATIONAL RAILROAD PASSENGER CORP., et al., Defendants.

Civ. A. No. 4:94cv74.

United States District Court, E.D. Virginia, Newport News Division.

Feb. 3, 1995.

James M. Boyd, Boyd & Boyd, James D. Crutchfield, Evans & Co., Norfolk, VA, for plaintiff.

David C. Bowen, Stephen R. Jackson, Willcox & Savage, Norfolk, VA, for Nat. R.R. Passenger Corp. d/b/a AMTRAK and CSX Transp.

. Allan L. Jackson, Deputy City Atty., Newport News, VA, for City of Newport News.

## MEMORANDUM OPINION AND ORDER

`PAYNE, District Judge.

Barbara G. Chandler, the administratrix of the estate of her deceased husband, Sam L. Chandler, instituted this action against the City of Newport News (the "City"), the National Railroad Passenger Corp. (d/b/a "AMTRAK") and CSX Transportation, Inc. ("CSX"). The action was filed in the Circuit Court for the City of Newport News and removed to this court. Mr. Chandler was killed when the truck he operated was struck by the passenger train "Colonial" which was operated by AMTRAK on tracks owned and controlled by CSX. The collision occurred at the Bell King Road crossing which was located in the City.

AMTRAK, CSX, and the City have moved for summary judgment on the ground that the negligence of Mr. Chandler precludes recovery by the estate. The City also has moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) for the additional reasons that it had no duty to maintain the right of way, tracks, or crossing and that any duty it may have had involved a governmental function, the negligent performance of which is not actionable under the doctrine of sovereign immunity.

For the reasons set forth below, the City's motion for judgment on the pleadings is

granted. The motion for summary judgment filed by AMTRAK and CSX, in which the City has joined, is denied.

## BACKGROUND

On April 29, 1992, Mr. Chandler, an experienced truck driver, drove a large dump truck filled with sand across the Bell King Road crossing. The dump truck was owned by Mr. Chandler's employer. In the course of his employment, Mr. Chandler had driven the same truck across this same crossing on three previous occasions in the five days preceding the fatal collision.[1]

The Complaint alleges that all three defendants were negligent in failing properly "to control and maintain" the "railroad tracks, adjacent right-of-way and crossing so as to keep them free from obstructions of view to operators of vehicles on Bell King Road" (Complaint, ¶ 10). In paragraph 11, the Complaint charges that all three defendants "negligently failed to properly equip and maintain appropriate signs and other equipment at the Bell King Road railroad crossing." Finally, in paragraph 12, the Complaint asserts that AMTRAK negligently operated the Colonial by: (i) failing to give adequate warning or notice of the approaching train; (ii) failing properly to blow the train whistle; (iii) operating at an unreasonably high and unsafe speed; (iv) failing to keep a proper lookout; (v) failing to keep the train under control; and (vi) failing to slow or stop the train "within an appropriate period of time."

It is undisputed that, on the morning of April 29, 1992, Mr. Chandler drove the truck onto the tracks at Bell King Road crossing where it collided with the Colonial and that Mr. Chandler was killed as a result of the collision. It is also undisputed that a crossbuck was the only warning sign posted at the crossing. Against this general background, we consider the defendants' motions.

### The City's Motion For Judgment On The Pleadings

■ The allegation in paragraph 11 of the Complaint charging all defendants with fail-

ing properly to equip and maintain signs and other equipment at the crossing clearly implicates governmental functions and therefore cannot support an action against the City. *See Taylor v. City of Newport News*, 214 Va. 9, 197 S.E.2d 209, 210 (1973) ("'[A] municipality] is immune from liability for negligence in performing or in failing to perform governmental functions."); *Transportation, Inc. v. City of Falls Church*, 219 Va. 1004, 254 S.E.2d 62, 64 (Va.1979) (holding that a municipality is immune from liability for negligence in maintaining traffic signals because the function has "the purpose of protecting the general public health and safety"). Mrs. Chandler's response to the City's motion "concedes that the doctrine of sovereign immunity" precludes any liability for the City's negligence in placing "road signs, surface markings, and other safety devices at and near railroad grade crossings." Hence, the motion for judgment on the pleadings is granted with respect to this claim.

■ The remaining claim against the City is found in paragraph 10 of the Complaint where Mrs. Chandler alleges that the City "negligently failed to properly control and maintain the aforesaid railroad tracks, adjacent right-of-way and crossing so as to keep them free from obstructions of view to operators of vehicles on Bell King Road." Mrs. Chandler's brief acknowledges that CSX, the owner of the right-of-way, is charged with the duty to remove obstructions to view on its right-of-way. Nonetheless, without citation of authority, Mrs. Chandler asserts the theory that the City has a concomitant duty.

The City argues that it has no duty to remove visual obstructions on the railroad's right-of-way. First, the City points to Va. Code § 56–411 which specifically assigns to railroads a duty "to clear from its right-of-way trees and brush for 100' on each side of public road crossings at grade when such trees or brush would otherwise obstruct the view of approaching trains." Thus, the legislature has clearly considered the question of visibility at railroad crossings and has not

---

1. On each occasion, Mr. Chandler drove a truck with sand over the Bell King Road crossing in the same direction he was travelling when the collision occurred and then returned with an empty truck travelling in the opposite direction.

imposed a duty on cities to maintain an unobstructed view. Second, the City cites a Wisconsin case, *Walker v. Bignell,* 100 Wis.2d 256, 301 N.W.2d 447 (1981), wherein the court concluded that, at common law, municipalities were not "held to an affirmative duty to cut roadside vegetation in order to assure motorist visibility" and then declined "to declare the existence of such a duty." *Id.* 301 N.W.2d at 453. The court went on to hold "as a matter of public policy" that the facts in that case should not expose a municipality to common-law liability. *Id.; see also Estridge v. City of Eau Claire,* 166 Wis.2d 684, 480 N.W.2d 513 (Ct.App.1991) (following the *Walker* holding).

No Virginia decision has addressed this point. And there is no case suggesting that, at common law, municipalities have a duty to maintain visibility at the intersection of their roads with railroad tracks. *Cf. Justice v. CSX Transp., Inc.,* 908 F.2d 119, 123 (7th Cir.1990) ("[C]ourts traditionally deny liability for physical harm to persons outside the land caused by natural conditions on the land.") (citing Restatement (Second) of Torts, § 363(1)). Under Va.Code Ann. § 1–10, the common law is "the rule of decision in Virginia, except as altered by the General Assembly." No statute alters the common law and, indeed, the General Assembly has placed on railroads the duty to remove obstructions on its right-of-way. This clearly bespeaks a decision by the General Assembly to place that obligation on railroads, rather than on political subdivisions of the state.[2] Consequently, as a matter of law, this theory of liability is legally insufficient.

Having recognized the fatal frailty in this theory, Mrs. Chandler asserts in her briefs that the City has a duty to maintain its streets in good repair and may be liable for the breach of that duty. Plaintiff's Response to the Motion by Newport News, at 4. To the extent this "maintenance and repair" theory refers to maintaining the surface of Bell King Road, it is not very well pleaded, if at all, in the Complaint. Mrs. Chandler's brief addresses her pleading problem obliquely by arguing that:

> [t]his language [paragraph 10] is sufficient to give the City fair notice of what the plaintiff's claim is and the grounds upon which it rests. The City could dispute this assertion only by protesting that the term "crossing" cannot reasonably be understood as including the surface of Bell King Road as it approached and crossed the railroad tracks. This the City has wisely elected not to do.

It is correct that the City's opening brief does not address the meaning of the word "crossing" in paragraph 10. However, in its reply brief, the City argues that Mrs. Chandler's discovery responses foreclose the contention that the term "crossing" includes the road as it approaches the CSX right-of-way. The discovery responses on which the City fastens this argument do not compel that result. Indeed, they simply acknowledge that the plaintiff does not know Mr. Chandler's "state of mind" as he drove along Bell King Road en route to the collision. Those responses, therefore, do not foreclose the contention that the term "crossing" includes the surface of the approaching roadway.

■ Liberally construed, then, and in light of the oral argument on this matter and the affidavit of Mr. Goodloe, the Complaint alleges that the City negligently allowed the surface of Bell King Road to deteriorate, which diminished Mr. Chandler's ability to navigate the railroad crossing. In evaluating this claim, the court has considered evidence, including Mr. Goodloe's affidavit, submitted by Plaintiff and Defendants. Thus, with respect to this claim against the City, the motion is converted from one for judgment on the pleadings to one for summary judgment, and the court will consider it here as such.

Rule 12(c) provides that in such a case, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In some circumstances, this may require giving the parties formal notice of the conversion and time to gather and submit evidence and arguments.

2. Although paragraph 10 could be read to mean that the duty therein mentioned is to remove obstructions on its own property, neither the City nor Mrs. Chandler addresses the issue in that fashion in the briefs.

*See, e.g., Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985) (finding that the lower court abused its discretion in ruling on a motion to dismiss after converting it to a motion for summary judgment "when the plaintiff had barely begun discovery"). Here, however, the parties already have had the requisite "reasonable opportunity." Plaintiff, in particular, presented the opinion of an expert that the condition of the road was hazardous which, according to the expert's speculation, was a proximate cause of the accident. Discovery having been substantially concluded by the time this expert opinion was submitted to the court and oral argument was had, the court finds it is appropriate to rule without delay on the City's motion as converted. *See Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) ("[W]hen a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motions as a Rule 56 motion."); *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985), *cert. denied, M.J.M. Exhibitors, Inc. v. Stern,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986) (reasoning that parties are on notice of potential conversion when either party submits affidavits or other extrinsic material).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In so doing, the court must view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'" that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). Once this initial showing under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e); *Catawba Indian Tribe,* 978 F.2d at 1339.

In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. That party must demonstrate that there is a *"genuine issue for trial."* Fed.R.Civ.P. 56(c) (emphasis added); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

The affidavit on which Mrs. Chandler's claim against the City depends is that of Bryant B. Goodloe, a professional engineer purporting to have expertise in the fields of, among others, highway engineering, highway traffic safety, and accident investigation. Mr. Goodloe offers opinions describing why the Bell King Road crossing was unreasonably dangerous and how Mr. Chandler might have acted reasonably and still driven his truck in front of the Colonial. In so doing, Mr. Goodloe details the risks that, in his opinion, Mr. Chandler must have been balancing as he turned onto Bell King Road and approached the crossing. According to Mr. Goodloe, Mr. Chandler: (1) "had to avoid running the wheels of his truck off the crum-

bling and ill-defined edge of Bell King Road" to avoid tipping the truck over; (2) "had to make constant adjustments in steering to compensate for the broken and deteriorated surface of Bell King Road"; and (3) "had continually to survey the surface of Bell King Road for pot-holes and other dangerous defects." On the strength of this opinion, Mrs. Chandler argues that the City breached a duty to maintain a portion of the road, which detrimentally affected Mr. Chandler's ability to navigate a portion of the road that lay ahead. The theory is legally insufficient for two reasons.

First, it is based on a misapprehension of the City's duty to maintain and repair the surface of its roads. The duty is imposed, the court finds, to avoid harm occasioned by driving over the surface such as that which occurs when a car hits a depression in the street. This harm, however, could be direct or indirect. For example, a vehicle could be damaged, or a person could be injured, simply by the impact with the pothole, or the driver could lose control of the vehicle because of the jarring effect of hitting the pothole and cause damage in another way. This sort of harm is not alleged, nor could it be in light of the evidence in the case. Also, it is conceivable that a street could fall into such disrepair that a motorist's ability to avoid an accident involving oncoming, or even following, vehicles might be diminished. That, of course, is not alleged to have happened here. And, Mrs. Chandler has cited no authority that the duty to maintain and repair a road is imposed for the purpose of avoiding collisions with trains approaching on an intersecting course. The duty of repair and maintenance has never been extended to reach that kind of harm. The court declines the implied invitation to do so here.

Second, even if the duty is of the scope necessary to support Mrs. Chandler's claim, it would be necessary to allege and prove that the motorist was preoccupied with the potholes or other surface defects. Although Mr. Goodloe describes two surface defects—a "crumbling" edge and a "broken and deteriorated" surface on the road—there is no evidence that Mr. Chandler was swerving or otherwise maneuvering his truck around pot-holes, even though at least two witnesses observed the truck on Bell King Road as it approached the crossing. On this record, a jury would be engaging in pure speculation if it found the City liable. Accordingly, as a matter of law, this theory of liability cannot succeed. Therefore, no claims remain against the City.

### The Motion Of AMTRAK And CSX For Summary Judgment

AMTRAK and CSX do not base their motion upon the absence of duties or the sufficiency of the evidence concerning the alleged breach of their duties. Rather, they argue that Mr. Chandler was contributorily negligent so as to bar the claim of the administratrix of his estate.

Mrs. Chandler opposes summary judgment on two grounds. First, she argues that, under Va.Code §§ 56–414 and 56–416, contributory negligence does not preclude recovery because those statutes require application of the rule of comparative negligence. Second, she contends that there are genuine disputes of material fact respecting whether Mr. Chandler was negligent and whether any negligence on his part was a proximate cause of the accident which resulted in his death.

### A. Applicability of Comparative Negligence

The controlling statutes are neither new nor lacking in decisional application. Virginia Code § 56–414 provides:

Every railroad company shall provide each locomotive passing upon its road with a bell of ordinary size and steam whistle or horn, and such whistle or horn shall be sharply sounded outside cities and towns at least twice at a distance of not less than 300 yards nor more than 600 yards from the place where the railroad crosses upon the same level any public highway or crossing, and such bell shall be rung or whistle or horn sounded continuously or alternately until the locomotive has reached such highway crossing, and shall give such signals in cities and towns as their local governing bodies may require.

Thus, Section 56–414 prescribes the minimum and maximum distance from a crossing

at which a train must sound its horn and it prescribes the method of sounding the signal. In clear terms, the statute provides that the signal, as prescribed, "shall be sharply sounded outside of incorporated cities and towns." Within cities and towns, the signals are those, if any, that "local governing bodies may require," and the statute confers upon such governing bodies the discretionary power to specify signals by ordinance.

■ The statute, however, does not address the signal to be given within a city or town where, as here, the municipality has not exercised its discretion to regulate the signals to be sounded within its limits. However, the Supreme Court of Virginia has held that the duty of the railroad is controlled by common law in that circumstance. Thus, absent a local ordinance, the railroad is obligated to give reasonable and timely warning of its approach to a crossing located within the corporate limits of cities and towns. *Norfolk & W. Ry. Co. v. Gilliam*, 211 Va. 542, 178 S.E.2d 499 (1971).

■ The other statute on which Mrs. Chandler fastens her comparative negligence theory is Va.Code § 56–416 which is closely related to, and is to be construed with, Section 56–414. *Id.* 178 S.E.2d at 502; *Norfolk & W. Ry. Co. v. White*, 158 Va. 243, 163 S.E. 530, 534 (1931). Section 56–416 provides:

> If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway not protected with an automatically operating gate, operating wigwag signal or other operating electrical or operating automatic crossing protection device, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such traveler, nor for an injury to or the destruction of property in his charge, where such injury, death, or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively; but the failure of the traveler to exercise such care may be considered in mitigation of damages. (Code 1919, § 3959; 1964, c. 621.)

This section departs from the traditional Virginia rule precluding recovery where there is contributory negligence by permitting a contributorily negligent driver to recover if the train fails "to give the signals required by law" when approaching a crossing that is not protected by an automatic protection device. In this event, the recovery is controlled by familiar comparative negligence principles.

Mrs. Chandler argues that where a municipality has not enacted an ordinance controlling the giving of signals within its borders, the signals required by Section 56–414 must be given. This interpretation obtains because Section 56–414 was enacted for the purpose of protecting human life and because drivers in municipalities which have not enacted signal ordinances will be deprived of the full measure of protection intended by the General Assembly when it enacted this remedial statute.

This position is indeed a sensible one in many respects. However, it is foreclosed by the plain language of the statute and the decisions interpreting it. The plain language says that the prescribed signals are to be sounded "outside of incorporated cities and towns." The Supreme Court of Virginia consistently has interpreted this to mean that:

> Code § 56–414 requires warnings to be given by trains approaching public grade crossings "outside of incorporated cities and towns." The warnings required by Code § 56–414 are not applicable to public grade crossings within the corporate limits of cities and towns. [Citations omitted.] Therefore, the warnings required by Code § 56–414 had no applicability to the Sixteenth Street Crossing.

*Gilliam*, 178 S.E.2d at 502–03; *see also Norfolk & W. Ry. Co. v. Hagy*, 201 Va. 183, 110 S.E.2d 177 (1959); *Norfolk & P. Belt Line R.R. Co. v. C.F. Mueller Co.*, 197 Va. 533, 90 S.E.2d 135 (1955); *Southern Ry. Co. v. Davis*, 152 Va. 548, 147 S.E. 228 (1929).

Recognizing the language in these and other Virginia decisions, Mrs. Chandler argues, with considerable force, that none of those decisions are binding here because none of them actually decided the issue. Instead, says Mrs. Chandler, the various articulations

in those decisions are *dicta* or were directed toward inconsequential points and hence are not authoritative, or were the result of concessions made by the parties in those cases.

An examination of those decisions leads to the conclusion that the interpretation of the statute in the decisional law is both authoritative and consistent with its plain language. Indeed, the interpretation reflected in *Gilliam* reflects a long line of decisions in which the Supreme Court of Virginia has interpreted Section 56–414 in a fashion which precludes this court from adopting the interpretation on which Mrs. Chandler relies.

■ Mrs. Chandler's argument is stronger concerning the interpretation to be accorded Va.Code § 56–416 and the rule of comparative negligence. The affidavits of several witnesses would permit a finding that the Colonial's horn was not sounded until a few seconds before the collision occurred. This would clearly be inadequate, whether Section 56–414 governed the duty to signal or not. Even in the absence of a statute or ordinance, a train must give "adequate, reasonable and timely warning of [its] approach ... to a public grade crossing." *Norfolk and Western Ry. Co. v. Gilliam*, 211 Va. 542, 178 S.E.2d 499, 503 (1971). However, the Supreme Court of Virginia has held that the signal required by the common law is not a signal "required by law" within the meaning of Section 56–416.

As explained above, in *Gilliam*, the Supreme Court of Virginia held that, because the accident occurred within a municipality which had not enacted a signal ordinance, the warnings required by Section 56–414 were not required. The Court held further:

> Since the warnings set forth in Code Section 56–414 were not required and the evidence fails to disclose an ordinance enacted pursuant to that section requiring approaching trains to give warnings at public crossings in the Town of Glasgow, the comparative negligence provision of Code Section 54–416 is not applicable to this case. Therefore, we hold that the case was submitted to the jury on improper instructions and for that reason the judgments entered on the verdicts must be reversed.

The absence of a controlling statute or ordinance does not relieve defendant of the common law duty to give adequate, reasonable and timely warning of the approach of its train to a public grade crossing. [Citations omitted.] Where the common law duty to warn applies, however, contributory negligence may bar a plaintiff's recovery. [Citation omitted.]

*Gilliam*, 178 S.E.2d at 503. This somewhat strained conclusion is established Virginia law, *see id.*, and this court, in the exercise of its federal diversity jurisdiction, is not free to ignore this binding precedent. Consequently, under Virginia law, Section 56–416 would apply only if, at the time of the accident, the City of Newport News had an ordinance governing how a train should sound its horn upon approaching a crossing. It did not; therefore, the common law governs the question, and, accordingly, contributory negligence is the rule.

**B. Evidence of the Negligence of Mr. Chandler**

■ Defendants argue that the evidence establishes, as a matter of law, that Mr. Chandler was contributorily negligent. Indeed, in previous litigation concerning this accident to which the estate was not a party, this court held that Mr. Chandler was negligent as a matter of law. Significantly different evidence is presented in this action, however, and the court is compelled to look anew at the circumstances surrounding the accident. The court finds that Defendants fail to meet their burden of demonstrating no genuine issue of material fact, and it denies their motion for summary judgment.

■ On the issue of contributory negligence, as well as whether such negligence was a proximate cause, Defendants bear the burden of proof at trial. *Virginia and Maryland R. Co. v. White*, 228 Va. 140, 319 S.E.2d 755, 758 (1984). Thus, it does not suffice for them to point to a lack of evidence that Mr. Chandler did exercise reasonable care. "[A]bsent evidence to the contrary, a decedent is presumed to have exercised reasonable care for his own safety and to have acted only as an ordinarily prudent man

would have acted under the circumstances." *Id.* Many of the arguments addressed by CSX and AMTRAK, therefore, fail significantly to advance their position. They stress, for example, that "plaintiff admitted it is unknown whether Chandler looked up the track in the direction of the oncoming 'Colonial' prior to moving onto the crossing. . . . Plaintiff has never supplemented this response to offer any evidence that Chandler looked before moving onto the crossing." Rebuttal Brief in Support of Amtrak's Motion, at 6.

CSX and AMTRAK point to several uncontroverted facts that appear to lie at the heart of their argument for summary judgment:

> It is uncontroverted that Chandler was familiar with the dump truck that he was operating and with the sight and noise limitations imposed by it. It is uncontroverted that Chandler had previously traversed the Bell King Road Crossing three times during the week prior to April 29, 1992. It is uncontroverted that Chandler drove from Nettles Drive up Bell King Road and onto the crossing without stopping. It is uncontroverted that a dump truck of the type operated by Chandler could have been maneuvered to approach the Bell King Road Crossing at a 90 degree angle in order to overcome any sight limitations imposed by the cab.

*Id.*

Defendants contend that these facts should be viewed in perspective of the decision in *Wright v. Norfolk and Western Ry. Co.*, 245 Va. 160, 427 S.E.2d 724 (1993), and its description of a motorist's duty upon approaching a railroad crossing. In *Wright,* and in several other cases, the Supreme Court of Virginia has required a driver " 'to look and listen at a time and place when both looking and listening will be effective,' intelligently using both his eyes and ears." *Id.* 427 S.E.2d at 730. If this were a complete description of the duty placed on Mr. Chandler, the defendants' argument would have to assume that his failure to perceive the train's approach establishes, as a matter of law, that he did not "look and listen" as required.

This assumption is faulty, however, in light of the *Wright* court's statement that a driver "ha[s] the duty to look and listen with reasonable care; he [does] not have the absolute duty to discover the presence of the train, unless by so looking and listening he was bound to have discovered it." *Id.* This, of course, means that, in some cases, a driver may exercise reasonable care in looking and listening, yet fail to discover a train's approach. If the crossing is as difficult to negotiate as the affidavit of Mr. Goodloe suggests, and if CSX and AMTRAK have violated their duties in the manner Mr. Goodloe postulates, Mr. Chandler's may be such a case. *See Southern Ry. Co. v. Campbell,* 172 Va. 311, 1 S.E.2d 255, 259 (1939) (noting that driving in front of a train "is not conclusive evidence" of the driver's negligence because, for example, he may have been "misled" by the defendant's negligence) (quoting *Kimball v. Friend's Adm'r,* 95 Va. 125, 27 S.E. 901, 903 (1897)). This question seems to be for a jury.

The position advanced by CSX and AMTRAK is strengthened, however, by a 1916 decision that suggests some situations may require a driver *to stop,* look, and listen, although the same decision acknowledges that stopping might be more likely to cause an accident at times. *See Washington & O.D. Ry. Co. v. Zell's Adm'x,* 118 Va. 755, 88 S.E. 309, 310, 311 (1916). Thus, by pointing to the uncontroverted (although not admitted) fact that Mr. Chandler did not stop on his approach to the track, the defendants argue that this is negligence as a matter of law. There are two problems with this argument. The first concerns proximate cause and the duty to stop in order to *listen* effectively. Construing the evidence in the light most favorable to Mrs. Chandler, whether Mr. Chandler stopped to listen or not, no horn was sounded until two seconds before the collision. Therefore, if those facts are found by the jury, then failing to stop to listen was not a proximate cause of the accident.

The second problem with the argument concerns whether the duty exists to stop to *look* effectively. CSX and AMTRAK assert at page 10 of the supporting memorandum that the duty to stop, which has its genesis in *Zell's Administrator,* exists "[t]o the extent

that a driver's vehicle interferes with his ability to listen or look." Defendants refer to no evidence, however, which shows that Mr. Chandler failed to maneuver his truck so that he could have a view down the tracks. In fact, the uncontroverted facts on which they rely suggest that Mr. Chandler could have so maneuvered the truck. In this way, they highlight one of the significant distinctions between the evidence in this case and that in *Wright*.

In explaining its decision to find contributory negligence as a matter of law, the Court in *Wright* first recalled expert testimony that "because of the limited field of view to the right-hand side from this truck and the distances involved and the geometry of the crossing, it was physically impossible for [the driver] to have heard or seen that train as he approached the crossing." 427 S.E.2d at 726. Then, after describing how the driver could have put himself in a position to hear more effectively, the Court added,

> He could have moved onto Maddox [,the street that crossed the tracks,] and the crossing by making a wider right turn, thus bringing his truck to an attitude with relation to the crossing so that he could see clearly north along the track. Obviously, [the driver] did none of these things, and caused this unfortunate accident.

*Id.* 427 S.E.2d at 730. The facts in *Wright* established that the driver *could not* have looked in an effective manner. This was because only 20 feet separated the point where the driver turned onto Maddox from the crossing, while the driver's dump truck was 25 feet long, *id.* 427 S.E.2d at 725, and before turning onto Maddox, the truck was headed south, the same direction as the train. Additionally, vehicles on Maddox proceeded across the tracks not west but to the south of west. It was testimony concerning this geometry and the build of the truck which persuaded the Court in *Wright* that the driver could not have looked effectively. Considering the affidavit of Mr. Goodloe, the decision in *Wright* precludes a grant of summary judgment because there are genuine disputes of material fact respecting whether Mr. Chandler was negligent and whether his neg-

ligence was a proximate cause of the accident.

### CONCLUSION

For the foregoing reasons, the motion of AMTRAK and CSX for summary judgment, in which the City has joined, is denied. The City is entitled to prevail on its motion for judgment on the pleadings, which to the extent converted under Rule 12(c) has been considered under summary judgment standards. Hence, the City is entitled to dismissal of the entire action as to it, notwithstanding denial of the motion for summary judgment in which it joined with CSX and AMTRAK.

It is so ORDERED.